OPINION OF THE JUSTICES TO THE GOVERNOR.

*University of Massachusetts. Commonwealth,* Hiring of property, Financial matters. *Landlord and Tenant,* Lease or letting to Commonwealth. *Constitutional Law,* Opinions of the Justices. *Supreme Judicial Court,* Opinions of the Justices.

The Trustees of the University of Massachusetts are authorized to enter into leases or tenancies at will obligating the Commonwealth to pay rent for private property by G. L. c. 75, §§ 1, 8, 11, and 12, as amended; G. L. c. 8, § 10A, as amended, is inapplicable to the University, and the trustees are not required to obtain the approval of the leases or tenancies by the State officers listed therein. [892–897]

The Trustees.of the University of Massachusetts are not required to include rent paid under leases or tenancies at will of private property in schedules filed by the Budget Director with the House and Senate Committees on Ways and Means pursuant to St. 1971, c. 719, § 13, or to St. 1972, c. 514, § 13. [896–897]

The Justices declined to answer questions by the Governor which involved no presently pending action by him or replies to which would not aid him in the performance of any present duty. [897–898]

The Justices answered questions of law by the Governor which involved present duties by him and the construction of statutes, although expressing doubt as to whether the occasion was appropriate for an advisory opinion, where the answers given were not adverse to any party in interest and the questions were of continuing importance and fully argued. [898–899]

On March 23, 1973, the Justices submitted the following answers to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The undersigned Justices of the Supreme Judicial Court respectfully submit their answers to the questions set forth in your request of January 12, 1973, and transmitted to the Justices on that date.

The questions are:

"1. Is the Commonwealth under a legal obligation to pay rent in accordance with the terms of the lease

of the premises at One Washington Mall, executed on behalf of the Trustees of the University of Massachusetts without the approval of the State Superintendent of Buildings, the Commissioner of Administration or the Governor, and without its inclusion on any schedule filed by the Budget Director with the House and Senate Committees on Ways and Means, in accordance with G. L. c. 8, § 10A, and St. 1972, c. 514, § 13?

"2. Is the Commonwealth under a legal obligation to pay rent in accordance with the terms of the tenancy-at-will of the premises on the sixth floor of 262 Washington Street, entered into on behalf of the Trustees of the University of Massachusetts without the approval of the State Superintendent of Buildings, the Commissioner of Administration or the Governor, as required by St. 1972, c. 514, § 13 and comparable provisions of prior acts?

"3. Is the Commonwealth under a legal obligation to pay rent in accordance with the terms of the tenancy-at-will of the premises on the third floor of 262 Washington Street, entered into on behalf of the Trustees of the University of Massachusetts without the approval of the State Superintendent of Buildings, the Commissioner of Administration or the Governor, and without its inclusion on any schedule filed by the Budget Director with the House and Senate Committees on Ways and Means, as required by St. 1972, c. 514, § 13 and comparable provisions of prior acts?

"4. If your answer to Question 1 is in the affirmative, do the Trustees of the University of Massachusetts have statutory authority to impose a legal obligation on the Commonwealth by executing a lease of other private premises without (a) the approval of the State Superintendent of Buildings, the Commissioner of Administration and the Governor, and without (b) its inclusion on a schedule filed by the Budget Director with the House and Senate Committees on Ways and Means — in accordance with G. L. c. 8,

§ 10A, and St. 1972, c. 514, § 13 and comparable pro-
visions of subsequent acts?

"5. If your answer to Question 2 or Question 3 is
in the affirmative, do the Trustees of the University
of Massachusetts have statutory authority to impose
a legal obligation on the Commonwealth by entering
into a tenancy-at-will of other private premises with-
out (a) the approval of the State Superintendent of
Buildings, the Commissioner of Administration and
the Governor, and without (b) its inclusion on a sched-
ule filed by the Budget Director with the House and
Senate Committees on Ways and Means — in accord-
ance with St. 1972, c. 514, § 13 and comparable pro-
visions of subsequent acts?

"6. If your answer to Question 1 or Question 4 is in
the affirmative, do the Trustees of State Colleges, the
Trustees of the Lowell Technological Institute, the
Trustees of the Southeastern Massachusetts Univer-
sity or the Board of Regional Community Colleges
have statutory authority to impose a legal obligation
on the Commonwealth by executing a lease of private
premises without (a) the approval of the State
Superintendent of Buildings, the Commissioner of Ad-
ministration and the Governor, and without (b) its
inclusion on a schedule filed by the Budget Director
with the House and Senate Committees on Ways and
Means — in accordance with G. L. c. 8, § 10A and
St. 1972, c. 514, § 13 and comparable provisions of
subsequent acts?

"7. If your answer to Question 2, 3 or 5 is in the
affirmative, do the Trustees of State Colleges, the
Trustees of the Lowell Technological Institute, the
Trustees of the Southeastern Massachusetts Univer-
sity or the Board of Regional Community Colleges
have statutory authority to impose a legal obligation
on the Commonwealth by entering into a tenancy-at-
will of private premises without (a) the approval of
the State Superintendent of Buildings, the Commis-

sioner of Administration and the Governor, and without (b) its inclusion on a schedule filed by the Budget Director with the House and Senate Committees on Ways and Means — in accordance with St. 1972, c. 514, § 13 and comparable provisions of subsequent acts?"

Upon receiving the request for an advisory opinion, we invited interested persons to file briefs no later than February 15, 1973. In response to our invitation, briefs were filed on behalf of the Attorney General, the Comptroller of the Commonwealth, the University of Massachusetts and the Trustees of One Washington Mall Trust. In giving our opinion on certain of the questions submitted to the Justices, we have refrained from expressing our views, even impliedly, on a variety of issues which are discussed in certain of the briefs filed with us.

Your request for our opinion recites that you are in receipt of a warrant issued by the Comptroller of the Commonwealth "for payment of rent under a lease and two tenancies-at-will entered into by the University of Massachusetts without compliance with" G. L. c. 8, § 10A, and the General Appropriations Acts passed by the Legislature annually. The warrant now awaits your signature. Your request states that "[t]he Comptroller informs me that he processed the invoices on which this warrant is based only because he had been ordered to do so in a proceeding brought by the Trustees of the University for a writ of mandamus." On December 5, 1972, a single justice of this court, with the consent of the Attorney General, ordered the Comptroller "to process for payment all outstanding invoices submitted by the Trustees of the University of Massachusetts for office space at 262 Washington Street, Boston, Massachusetts and all invoices for such amounts as may become due for office space at One Washington Mall, Boston, Massachusetts."

In order to answer the first three questions we must examine whether the Trustees of the University of Mas-

sachusetts had authority to enter into a lease or tenancies at will of the designated premises without complying with the requirements of G. L. c. 8, § 10A, and the General Appropriations Acts passed by the Legislature from year to year. (E.g., St. 1972, c. 514, § 13.)

General Laws c. 8, § 10A, as amended through St. 1962, c. 757, § 37, provides in part: "The commonwealth, acting through the executive or administrative head of a state department, commission or board and with the approval of the superintendent [of buildings] and of the governor and council and of the commissioner of administration, may lease for the use of such department, commission or board, for a term not exceeding five years, premises outside of the state house or other building owned by the commonwealth, if provision for rent of such premises for so much of the term of the lease as falls within the then current fiscal year has been made by appropriation."

In *United States Trust Co.* v. *Commonwealth*, 348 Mass. 378, we examined the history surrounding the passage of G. L. c. 8, § 10A, in its original form (St. 1924, c. 356), and concluded that "[s]ection 10A was enacted to give authorization to heads of departments, commissions, and boards to enter into leases for premises outside State owned buildings" (p. 383). The authority to enter into such leases is, however, subject to the approval of the State officers listed in § 10A. The question then is whether the University of Massachusetts was required to secure these approvals before entering into the designated lease and tenancies at will.

General Laws c. 75, which establishes and defines the authority of the University of Massachusetts, was substantially amended by St. 1962, c. 648. We examine first the legislative history that led to this amendment. Chapter 92 of the Resolves of 1961 provided that a special commission should be established "for the purpose of making an investigation and study of the laws relating to the budgetary powers of the trustees of the University of Massachusetts." On January 24, 1962, the Report

of the Special Commission on Budgetary Powers of the University of Massachusetts and Related Matters (Report) was presented to the Senate and House of Representatives. House Document No. 3350. The commission perceived its task as determining "which of the budgetary controls placed upon the state-supported schools need remain and which controls can be lessened," and noted that "[t]he distinctive character of higher education is that it thrives in an atmosphere of academic freedom, and becomes mediocre in an atmosphere of excessive government control."

The commission recommended "that administrative control and responsibility be placed in the Board of Trustees which is best informed and equipped to make management decisions." The Report came to the conclusion that "[t]he time has arrived to provide the University with the necessary authority for self-management in proportion to the requirements and responsibilities for educating many young people."

While recognizing that "[t]hese recommendations in no way compromise the Legislature's control over public funds . . . [or] the right to designate the amount or level of support," the commission affirmed that its recommendations were meant to insure that "no discretionary decisions on the part of state fiscal officers regarding need or desirability of an expenditure would be allowed to interfere with University management."

As a result of these recommendations and the proposed legislation submitted by the commission, St. 1962, c. 648, was enacted with virtually the same language as suggested by the commission. In light of the legislative history outlined, we conclude that certain sections of G. L. c. 75, as amended by St. 1962, c. 648, indicate clearly that the Legislature granted the Trustees of the University of Massachusetts autonomous authority to enter into the lease and tenancies at will in question.

General Laws c. 75, § 1, as amended through St. 1969, c. 396, § 7, presently provides that: "There shall be a University of Massachusetts which shall continue as a

state institution within the department of education but not under its control and shall be governed solely by the board of trustees established under section twenty of chapter fifteen.  In addition to the authority, responsibility, powers and duties specifically conferred by this chapter, the board of trustees shall have all authority, responsibility, rights, privileges, powers and duties customarily and traditionally exercised by governing boards of institutions of higher learning.  In exercising such authority, responsibility, powers and duties said board shall not in the management of the affairs of the university be subject to, or superseded in any such authority by, any other state board, bureau, department or commission, except as herein provided."

General Laws c. 75, § 8, as appearing in St. 1962, c. 648, § 1, provides: "Notwithstanding any other provision of law to the contrary, the general court shall annually appropriate such sums as it deems necessary for the maintenance, operation and support of the university; and such appropriations shall be made available by the appropriate state officials for expenditure through allotment, transfer within and among subsidiary accounts, advances from the state treasury in accordance with the provisions of sections twenty-four, twenty-five and twenty-six of chapter twenty-nine, or for disbursement on certification to the state comptroller in accordance with the provisions of section eighteen of said chapter twenty-nine, as may from time to time be directed by the trustees or an officer of the university designated by the trustees."

General Laws c. 75, § 11, as amended through St. 1965, c. 877, provides, in part: "The trustees shall have the authority . . . to enter into agreements or contracts with . . . individuals where such agreements or contracts, in the judgment of the trustees, will promote the objectives of the university."

General Laws c. 75, § 12, as appearing in St. 1962, c. 648, § 1 provides: "The trustees shall, on behalf of the commonwealth, manage and administer the university

and all property, real and personal, belonging to the commonwealth and occupied or used by the university, and shall keep in repair houses, buildings and equipment so used or occupied."

We conclude that the above sections of G. L. c. 75 provide authority for the Trustees of the University of Massachusetts to enter into the designated lease and tenancies at will without the necessity of complying with G. L. c. 8, § 10A.

We think that the grant of administrative autonomy to the University effected by St. 1962, c. 648, is inimical to a requirement that the University secure approvals under G. L. c. 8, § 10A, when entering into a lease or tenancy at will. The opposite view would seem illogical and contrary to the manifest legislative intent to free the University from the veto power of other State agencies or officials in these matters.

The Appropriations Acts passed by the Legislature have, in recent years, contained a limitation of G. L. c. 8, § 10A. For example, both St. 1971, c. 719, § 13, and St. 1972, c. 514, § 13, provide: "Notwithstanding the provisions of section ten A of chapter eight of the General Laws, no lease negotiated as provided therein nor any agreement providing for a tenancy at will or other space rental shall be signed by the executive or administrative head of a state department, commission or board or approved by the state superintendent of buildings and by the governor and council and by the commissioner of administration unless it is in accordance with schedules filed by the budget director with the house and senate committees on ways and means prior to the passage of this act."

By their own terms St. 1971, c. 719, § 13, and St. 1972, c. 514, § 13, apply only to leases, tenancies at will or space rental agreements negotiated within the terms of G. L. c. 8, § 10A. Since we have concluded that G. L. c. 8, § 10A, does not apply to the University of Massachusetts, it follows that St. 1971, c. 719, § 13, and St. 1972,

c. 514, § 13, do not apply to any space rental agreement negotiated by the Trustees of the University.

Section 20 of St. 1971, c. 719, and § 20 [1] of St. 1972, c. 514, exempt the University of Massachusetts from the provisions of §§ 10, 15, 16, 16A and 16B of c. 719 and c. 514, respectively. Since we have concluded that § 13 is not in any event applicable to the University, the failure to state specifically that the University is exempted from the provisions of that section is not significant.

In the light of the foregoing discussion, we answer questions 1, 2 and 3, "Yes."

Questions 4 and 5 ask generally whether the Trustees of the University of Massachusetts have the statutory authority to enter into leases or tenancies at will of private premises without complying with the requirements of G. L. c. 8, § 10A. While we believe that our reply to your first three questions may effectively answer questions 4 and 5, we must respectfully decline to answer these questions because you have no presently pending action in view, the performance of which raises "serious doubts

---

[1] Statute 1971, c. 719, § 20, and St. 1972, c. 514, § 20, provide: "The provisions of sections ten, fifteen, sixteen, sixteen A and sixteen B of this act shall not apply to expenditures from appropriations made under this act for the division of state colleges and institutions under the control of the board of trustees of state colleges, the Lowell Technological Insitute of Massachusetts, the Southeastern Massachusetts University, the University of Massachusetts and the board of regional community colleges under the control of said board; nor shall the provisions of section nine B or section twenty-nine of chapter twenty-nine of the General Laws or any provision of section six or section eight of this act apply to said expenditures which are inconsistent with any provision of the General Laws specifically regulating the expenditure of public funds at each of said institutions; provided, however, that on or before the first of October of the fiscal year nineteen hundred and seventy-two [seventy-three], each institution of higher education shall file with the board of higher education: (1) a certified list of professional positions and the salaries to be paid for said positions to be used in the staffing of said institutions; (2) a certified statement of the salary ranges to be used for all professional positions; (3) a certified copy of vacant positions; and (4) a list of the last merit increases granted; and, further provided, that the board of higher education shall file forthwith with the house and senate committees on ways and means copies of said lists and statement."

as to . . . [your] power and authority to take such action, under the Constitution, or under existing statutes." *Answer of the Justices,* 148 Mass. 623, 626. *Answer of the Justices,* 356 Mass. 769, 773–774.

Questions 6 and 7 ask whether specified State educational institutions have the authority to enter into leases or tenancies at will of private property without complying with the requirements of G. L. c. 8, § 10A, or St. 1972, c. 514, § 13.

The Constitution provides that the opinions of the Justices may be required by the Governor "upon important questions of law, and upon solemn occasions." Part II, c. 3, art. 2, as amended by art. 85 of the Amendments. These words have been construed to mean that "such opinions may be required only respecting pending matters in order that assistance may be gained in the performance of a present duty. *Opinion of the Justices,* 186 Mass. 603, 608; 190 Mass. 611, 612." *Answer of the Justices,* 211 Mass. 630, 631. A reply to questions 6 and 7 will not aid you in the performance of any present duty. We, therefore, respectfully decline to answer these questions.

Putting aside our doubts as to whether this is an appropriate occasion for the giving of an advisory opinion, we have answered the questions concerning any present duties you may have with respect to the warrants presented to you by the Comptroller. Where private rights are involved, such as the rights of the landlords in the circumstances presented to us, it would normally be inappropriate for us to give an opinion on a matter of statutory construction which could be brought to the court by the usual litigation process, initiated by the parties in interest. *Answer of the Justices,* 148 Mass. 623, 624–625. Cf. *Answer of the Justices,* 150 Mass. 598, 601–602. Here, however, the answers we give are not adverse to any landlord and are directed solely to questions of law of continuing importance, which have been fully argued to us in carefully considered briefs. Our willingness to give our opinion on certain questions arises from the par-

ticular circumstances, and our action "is not to be regarded as establishing a practice." *Opinion of the Justices*, 269 Mass. 611, 619. See *Opinion of the Justices*, 330 Mass. 713, 727.

Mr. Justice Reardon did not participate in this opinion.

> G. JOSEPH TAURO
> FRANCIS J. QUIRICO
> ROBERT BRAUCHER
> EDWARD F. HENNESSEY
> BENJAMIN KAPLAN
> HERBERT P. WILKINS