ANSWER OF THE JUSTICES TO THE GOVERNOR.

Questions arising from a disagreement between the Secretaries of two ex-
ecutive departments of the Commonwealth, presented to the Governor
under G. L. c. 30, § 5, and answers to which he sought from the
Justices, did not present a "solemn occasion" under art. 85 of the
Amendments to the Massachusetts Constitution, and the Governor was
not entitled to answers, for the reasons that the Attorney General was
not a disputant and was available for advice, that a decision by the Gov-
ernor either way would merely dictate the scope of certain administra-
tive regulations, and that answers by the Justices would involve factual
determinations. [841-844]
The Justices declined to give their opinions to the Governor on questions,
presented to him under G. L. c. 30, § 5, by the Secretary of Environ-
mental Affairs and involving a disagreement with the Secretary of Con-
sumer Affairs and referred to the Justices by the Governor, as to the
authority of the Secretary of Environmental Affairs under c. 30, §§ 61
and 62, to include in the regulations of his department a directive that
environmental regulations of each executive department should apply to
"the issuance of a lease, permit, license, certificate, or any entitlement
for use," for the reason that the Governor was not under any "present
duty" to act, and therefore there was no "solemn occasion" under art.
85 of the Amendments to the Massachusetts Constitution, since no regu-
lations existed to conflict with the regulations of the Department of En-
vironmental Affairs, and possibly no actual dispute existed as to "jur-
isdictions or powers" which the disputants could not resolve [844-846];
and for the reason that the questions asked were many and different and
the answers would require factual determinations [846-847].

On October 5, 1973, the Justices submitted the following
reply to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The Justices of the Supreme Judicial Court submit the
following in reply to the questions set forth in your request

dated July 27, 1973.

The request recites that the Secretary of Environmental Affairs and the Secretary of Consumer Affairs are in disagreement as to the scope of the authority and responsibility granted to the Secretary of Environmental Affairs by G. L. c. 30, §§ 61-62 (the so called environmental policy act).[1] Pursuant to § 62, the Executive Office of Environmental Affairs has issued regulations which are intended to provide general guidelines for the environmental regulations which each executive office is required to promulgate. The immediate cause of the present dispute is § 2.4 of the environmental affairs regulations which, in effect, requires that the environmental regulations to be issued by each executive department must apply to all actions of those departments which involve "(c) . . . the issuance of a lease, permit, license, certificate, or any entitlement for use." In a letter (attached to the Governor's request) to the Secretary of Environmental Affairs, the Secretary of Consumer Affairs objected that § 2.4 (c) is not authorized by §§ 61 and 62 in that it purports to extend to administrative functions, such as licensing, which are beyond the scope of the statute. He indicated that he could not submit his own departmental regulations for approval by the Secretary of Environmental Affairs until this question is resolved, and he requested that "firm legal opinion" as to the proper interpretation of §§ 61 and 62 be obtained.

---

[1] Sections 61 and 62, inserted by St. 1972, c. 781, § 2, read: "*Section 61.* All agencies, departments, boards, commissions and authorities of the commonwealth shall review, evaluate, and determine the impact on the natural environment of all works, projects or activities conducted by them and shall use all practicable means and measures to minimize damage to the environment. Unless a clear contrary intent is manifested, all statutes shall be interpreted and administered so as to minimize and prevent damage to the environment. Any determination made by an agency of the commonwealth shall include a finding describing the environmental impact, if any, of the project and a finding that all feasible measures have been taken to avoid or minimize said impact.

"As used in this section and section sixty-two, 'damage to the environment' shall mean any destruction, damage or impairment, actual or probable, to any of the natural resources of the commonwealth and shall include but not be limited to air pollution, water pollution, improper sewage disposal, pesticide pollution, excessive noise, improper operation of dumping grounds, impairment and eutrophication of rivers, streams, flood plains, lakes, ponds, or other surface or subsurface water resources; destruction of seashores, dunes, marine resources, wetlands, open spaces,

The Secretary of Environmental Affairs thereupon wrote a memorandum to the Governor (also attached to the request) stating his disagreement with the Secretary of Consumer Affairs and requesting, pursuant to G. L. c. 30, § 5, that the Governor resolve their dispute. The Governor, in turn, determined that the questions presented to him are "important"

natural areas, parks, or historic districts or sites. Damage to the environment shall not be construed to include any insignificant damage to or impairment of such resources.

"*Section 62.* No agency, department, board, commission, or authority of the commonwealth or any authority of any political subdivision thereof shall commence any work, project, or activity which may cause damage to the environment until sixty days after it has published a final environmental impact report in accordance with the provision of this section or until sixty days after a public hearing on said report, provided that research, planning, design and other preliminary work necessary to describe and evaluate such project for the purposes of this section may be undertaken.

"An environnental impact report shall contain detailed statements describing the nature and extent of the proposed work and its environmental impact; all measures being utilized to minimize environmental damage, any adverse short-term and long-term environmental consequences which cannot be avoided should the work be performed; and alternatives to the proposed action and their environmental consequences. The preparation of said report shall be commenced during the initial planning and design phase of any work, project, or activity subject to this section and the report shall be so prepared and disseminated as to inform the originating agency, reviewing agencies, the appropriate regional planning commission, the attorney general and the public of the environmental consequences of state actions and the alternatives thereto prior to any commitment of state funds and prior to the commencement of the work, project, or activity. All reviewing agencies, and any state agency, department, board, commission, division or authority which has jurisdiction by law or special expertise with respect to any environmental impact involved shall affix their written comments to the final impact report. In order to insure an interdisciplinary review, the secretary of environmental affairs shall in conjunction with any agency involved jointly approve the selection of any consultant engaged to prepare the draft or final impact report.

"The secretaries of the executive offices shall each promulgate rules and regulations approved by the secretary of environmental affairs to carry out the purposes of this section which shall be applicable to all agencies, departments, boards, commissions, authorities or instrumentalities within each of such executive offices and which shall conform with the requirements of the National Environmental Policy Act Pub. Law 91-190, and amendments thereto. Any draft report, final report, and all written comments required by said regulations shall be public documents. Said reports shall be submitted to the secretary of environmental affairs who shall issue a written statement indicating whether or not in his judgment said reports adequately and properly comply with the provisions of this section.

"For the purposes of carrying out the provisions of this section, funds made available for the purpose of design of or planning or performing said work, project, or activity shall be available and may be expended for the research, preparation, and publication of the reports required by this section and expenses incidental thereto, and said funds may be transferred or otherwise may be made available to other state departments and resource agencies designated by the secretary of environmental affairs for the purpose of meeting the expenses incurred in evaluating the draft or final impact report."

and "essentially legal," and thus exercised his authority under Part II, c. 3, art. 2, of the Massachusetts Constitution, as amended by art. 85 of the Articles of Amendment, to request the advice of the Justices.

The questions as to which the Governor has requested our opinion are:

"1. Is the Secretary of Environmental Affairs required by G. L. c. 30, §§ 61 and 62 to disapprove proposed rules and regulations which do not apply to actions which are essentially private but in which the state has a limited involvement through the issuance of a lease, permit, license, certificate, or any entitlement for use?

"2. If your answer to Question 1 is in the negative, is it within the discretion of the Secretary of Environmental Affairs to disapprove proposed rules and regulations which do not apply to actions in which the state has a limited involvement through the issuance of a lease, permit, license, certificate, or any entitlement for use *solely* on the ground that they fail to apply to such actions?"

We must respectfully decline to answer. Although we agree that these are "important questions of law," the Constitution does not permit us to answer even important questions unless they are presented to us in the context of "solemn occasions." We believe that the present dispute does not present such an occasion.

Not every request to the Governor under G. L. c. 30, § 5, to resolve disagreements within the executive branch presents a "solemn occasion." On only one prior occasion has the Governor requested the Justices to determine a question which was presented to him under § 5. *Opinion of the Justices,* 354 Mass. 804 (1968). In that opinion the Justices, with little discussion as to the existence of a "solemn occasion," did answer the Governor's question. There were several distinguishing aspects of the factual setting in which that question arose, however, which contributed to the solemnity of that occasion and which are not present on this occasion.

First, the Attorney General was a party to the underlying intra-executive dispute, thus depriving the Governor of the Attorney General's disinterested legal advice. 354 Mass. at 808. In the present situation, the Attorney General is not one of the disputants and thus is available upon request to provide legal advice to the Governor and to the executive departments. G. L. c. 12, §§ 3, 9. See *Answer of the Justices,* 211 Mass. 630, 631 (1912). Considerations of judicial economy as well as sensitivity to the constitutional requirement of the separation of powers (art. 30 of the Declaration of Rights of the Massachusetts Constitution) suggests that the Governor should look to the Attorney General as his primary legal advisor before submitting a request to the Justices.

Second, an aspect of the earlier answer which distinguishes it from the present situation is the consequences that might have resulted from an incorrect resolution by the Governor of the question then confronting him. At issue was a dispute between the Attorney General and the Commissioner of Corporations and Taxation as to their respective powers to enforce the State income tax laws (G. L. cc. 62, 63). The specific question before the Governor involved the authority of the Commissioner to provide the Attorney General with individual and corporate income tax returns in furtherance of a pending criminal investigation. If the Governor had ordered the Commissioner to turn over to the Attorney General the requested tax returns, he would have been subjecting the Commissioner to the risk of criminal prosecution under the nondisclosure provisions of cc. 62, 63, in the event the Governor's interpretation of the law proved to be erroneous. In the present situation, on the other hand, a resolution either way by the Governor will merely dictate the scope of the administrative regulations to be issued under G. L. c. 30, § 62. His decision would subject no official to any sort of personal liability. The possible consequences of a decision by the Governor are therefore quite different here from what they were in the earlier situation.

Third, a final distinction between the situation in *Opinion of the Justices,* 354 Mass. 804, and the present one lies in the

nature of the basic issues involved. The ultimate issue in the earlier opinion, and the one to which the Justices devoted major attention, was the scope of the authority of the Attorney General to investigate and prosecute violations of the State income tax laws. It was essentially a jurisdictional dispute between the Attorney General and the Commissioner of Corporations and Taxation. It has been suggested that the advisory opinion is a particularly appropriate vehicle for dealing with issues such as that one, i.e., those involving "technical questions concerning the internal structure of government." 1964 Ann. Surv. of Mass. Law 95, 114. In contrast, the present request, while superficially involving only a dispute between administrative officers as to the scope of their respective authorities and responsibilities, in reality involves factual determinations with possible ramifications extending to every aspect of State involvement in private affairs. The briefs submitted by the amici curiae are most helpful in demonstrating the breadth and variety of State "activities" which are implicit in the terms "lease, permit, license, certificate, or any entitlement for use."[2] It is clear that the Justices are now being asked to advise on far more than a mere jurisdictional dispute between members of the executive department. "[W]hen economic and social legislation involving factual questions is at issue, the desirability of such [advisory] opinions is more doubtful." 1964 Ann. Surv. of Mass. Law at 114.

For the foregoing reasons, we believe that the *Opinion of the Justices,* 354 Mass. 804, is distinguishable from the pres-

---

[2] We anticipate that the briefs of the amici curiae, in addition to their usefulness to us, will be of valuable assistance to the Governor, the Attorney General, and the secretaries of the various executive departments as they carry out their responsibilities under § 62 of c. 30. The many amici curiae who have responded to our invitation for briefs include: the Conservation Law Foundation of New England and the Environment Committee of the Boston Bar Association, the Executive Office of Human Services and Department of Public Health, the Executive Office of Environmental Affairs, the Executive Office of Consumer Affairs, The Massachusetts Hospital Association, Inc., the Attorney General, the Associated General Contractors, Associated Industries of Massachusetts, the Building and Construction Trades Council, AFL-CIO, the Greater Boston Chamber of Commerce, the Greater Boston Real Estate Board, and the Home Builders Association of Massachusetts, and four individual municipal bond lawyers. One additional brief was submitted and subsequently withdrawn.

ent situation and that we are not required to answer questions merely because the Governor has been confronted with a dispute under G. L. c. 30, § 5. The existence of a solemn occasion must be determined according to traditional standards, without attaching undue significance to the procedural route by which the questions arose.

The Justices have often discussed the extent of their constitutional power to issue advisory opinions. The general rule is that a solemn occasion exists "when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes." *Answer of the Justices,* 148 Mass. 623, 626 (1889). Thus, on prior occasions the Justices have seen fit to provide their opinion when the Governor was confronted with a question of statutory interpretation upon the resolution of which further administrative action depended. See, e.g., *Opinion of the Justices,* 304 Mass. 681 (1939). There are, however, several well established limitations on the general rule, at least two of which apply in the present situation.

In the first place, it is not clear that the Governor is under a "present duty" to act on the questions before him. The Justices have often reiterated that they will answer questions "only respecting pending matters in order that assistance may be gained in the performance of a present duty." *Answer of the Justices,* 211 Mass. 630, 631 (1912). *Answer of the Justices,* 217 Mass. 607, 612 (1914). *Opinion of the Justices,* 363 Mass. 889, 898 (1973). the Governor is required by G. L. c. 30, § 5, to "determine" questions as to the respective jurisdictions or powers of executive and administrative departments and to resolve conflicts between inconsistent regulations. It is clear that no existing regulations are in conflict (only the Secretary of Environmental Affairs has, to date, issued regulations). It is also entirely possible that there exists no actual dispute as to "jurisdictions or powers" among the several executive officers. It may be that the supposed "conflict" would be eliminated if discussion were focused on the specific activities of each ex-

ecutive and administrative branch rather than on the hope-lessly general "lease, permit, license, certificate, or any en-titlement for use." The Governor should not feel obligated to act under c. 30, § 5, until he is certain that an actual con-crete dispute exists. In other words, the Governor has no "present duty" to act until the disputants have themselves made every effort to resolve, or at least clearly to define, the conflict between them. Thus, the Governor is not under a present duty, and no solemn occasion exists.

In the present situation, it seems particularly appropriate to return the dispute to the administrative level for further ascertainment of the questions over which conflict actually exists. The statute at issue, G. L. c. 30, § 62, requires the secretary of every executive office to "promulgate rules and regulations approved by the secretary of environmental af-fairs." The questions before the Justices have arisen in response to the issuance by the Secretary of Environmental Affairs of regulations which, in necessarily general terms, outline the substance which the environmental regulations of other departments must contain in order to be approved by the secretary. The Secretary of Consumer Affairs has ob-jected that these regulations exceed the scope of the statute in that they would extend to the multitude of licensing ac-tivities carried out within his department. Yet the Secretary of Consumer Affairs has not submitted his own proposed regulations for the approval of the Secretary of Environ-mental Affairs. Apparently no effort has been made to ascertain whether the licensing functions about which the Secretary of Consumer Affairs is concerned are excluded by the "Categorical Exemption[s]" of the Secretary of En-vironmental Affairs' regulations (§ 8).

In requiring that each secretary issue his own regulations under c. 30, § 62, the Legislature undoubtedly recognized that each executive office was in the best position initially to determine which of its activities involved the potential of en-vironmental impact sufficient to bring it within the scope of that section. Thus, it is the responsibility of each secretary to review the functions carried out within his office and to

determine which should be subject to the requirements of
§ 62. The regulations he then would issue would reflect those
determinations. Only after such an activity-by-activity re-
view by each responsible officer will it be possible to deter-
mine if in fact there exists a dispute as to the scope of G. L.
c. 30, § 62. For the Justices (or the Governor) to provide
answers to the questions as presently phrased might be
deemed to obviate the need, which the statute appears to con-
template, for each executive office to review its own ac-
tivities in light of the requirements of § 62. Thus, until the
Secretary of Environmental Affairs has actually disapproved
the regulations proposed by another executive office, it is not
evident that a dispute of substance exists. There being no ac-
tual conflict before him, the Governor has no "present
duty" under c. 30, § 5, and there is no solemn occasion for
an opinion of the Justices.

A second limitation on our authority to give advisory
opinions, closely related to the "present duty" requirement,
is that we cannot answer abstract questions of law or hypo-
thetical questions. See *Opinion of the Justices,* 324 Mass.
736, 745 (1949), and cases cited. The Governor's present re-
quest is for advice on what at first glance appears to be a
specific, concrete issue. Any answer to the apparently simple
question whether the Secretary of Environmental Affairs
may or may not disapprove certain environmental regula-
tions, however, would certainly affect a broad range of
activities and interests, many of which cannot presently be
foreseen and are therefore not here represented. Each of the
briefs of the amici curiae contains hypothetical examples of
State "activities" which might plausibly be deemed "a lease,
permit, license, certificate, or any entitlement for use" and
as to which the amicus finds it "inconceivable" that it was
intended, or not intended (as the case may be), to fall within
the scope of § 62. Because so many of these examples, on
both sides of the issue, are convincing, it seems apparent that
the "question" presented by the Governor is in fact many
different questions, each requiring factual determinations
which we cannot possibly make. Thus, the question is "ab-

stract" in the sense that it cannot be answered at its present level of generality without first considering each of the multitude of factual questions which are implicit in it. No single answer could possibly be appropriate.

For all these reasons, we have concluded that no solemn occasion requiring our opinion presently exists. We request, therefore, to be excused from answering the questions.

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS