To the Honorable the Senate of the Commonwealth of Massachusetts:
The Justices of the Supreme Judicial Court respectfully submit their answer to the question set forth in an order adopted by the Senate on October 28, 1999, and transmitted to the Justices on November 3, 1999.[1] The order indicates that there is pending before the General Court a bill, Senate No. 148, entitled *1036 “An Act relative to health care facilities.” A copy of the bill was transmitted with the order. The bill adds five new paragraphs to G. L. c. 266, § 120E, creating fixed buffer zones of twenty-five feet from any portion of an entrance, exit, or driveway of a reproductive health care facility, as well as a fixed corridor zone from a clinic entrance to the street. With limited exceptions, the bill prohibits anyone from knowingly entering into or remaining within the buffer zones.[2]
*1037 The order indicates that grave doubt exists as to the constitutionality of the bill, if enacted into law, and requests our opinion on this question:
“Does Senate No. 148, by restricting access to buffer zones outside reproductive health care facilities, violate the right of freedom of speech or the right of the people peaceably to assemble as provided by the First Amendment to the Constitution of the United States (which the Fourteenth Amendment applies to the Commonwealth) or as provided in Articles XVI and XIX of the Declaration of Rights of the Commonwealth?”
As a threshold matter, we are authorized to render an opinion on this question. Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments, provides that “[e]ach branch of the legislature, as well as the governor or the council, shall have authority to require the opinions of the justices of the supreme judicial court, upon important questions of law, and upon solemn occasions.” The Justices’ constitutional duty is to render opinions only when they are properly required, and to abstain from answering questions of law not required under this provision. Answer of the Justices, 319 Mass. 731, 733-734 (1946). A solemn occasion exists “when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes.” Answer of the Justices, 364 Mass. 838, *1038 844 (1973), quoting Answer of the Justices, 148 Mass. 623, 626 (1889). When an opinion of the Justices “would not assist the requesting body in carrying out a present duty ... no solemn occasion exists and the Justices are constitutionally constrained from rendering an advisory opinion regardless of the importance of the particular questions.” Answer of the Justices, 426 Mass. 1201, 1203-1204 (1997), citing Answer of the Justices, 406 Mass. 1220, 1224 (1989) (declining to answer questions propounded by acting Governor where no question raised concerning acting Governor’s power or authority).
The Legislature ended its first annual formal session on November 17, 1999 (third Wednesday), and the second annual session commenced on January 5, 2000 (first Wednesday). See Joint Rule 12A, Manual for the General Court, 1997-1998, at 698; art. 64, § 2, as amended by art. 82, of the Amendments to the Massachusetts Constitution. Until 1995, all proposed legislation pending before the Legislature expired at the end of each annual session if not enacted by both branches. In the past, if the question was propounded to us at the end of the first annual session, the expiration of the bill in the second annual session made it impossible for us to render an opinion. See Answer of the Justices, 401 Mass. 1234, 1235 (1988). However, in June, 1995, the Senate and the House of Representatives adopted substantial changes in their Joint Rules changing this internal procedure, pursuant to their rule making authority under Part D, c. 1, § 2, art. 7; § 3, art. 10, of the Massachusetts Constitution. Under Joint Rule 12B, “[a]ny matter pending before the General Court at the end of the first annual session . . . shall carry over into the second annual session of the same General Court in the same legislative status as it was at the conclusion of the first annual session.” Manual for the General Court, 1997-1998, at 699. When these legislative rules, as consistently interpreted by the Legislature itself, are applied to the present bill, it is clear that the bill will carry over into the second annual session of the 1999-2000 General Court and will remain pending. Therefore, a solemn occasion exists and it is proper to answer the question.
We analyze the question under the First Amendment framework articulated by the United States Supreme Court and *1039 other Federal courts.[3] Because the buffer zone applies regardless of political viewpoint, Senate No. 148 is a content-neutral statute. A statute or ordinance is content-neutral if “it is ‘justified without reference to the content of the regulated speech’ ” (emphasis in original). Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989), quoting Clark v. Community for Creative NonViolence, 468 U.S. 288, 293 (1984). See Boston v. Back Bay Cultural Ass’n, 418 Mass. 175, 179 (1994). Under this analysis, “[t]he principal inquiry ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” Ward v. Rock Against Racism, supra at 791, citing Clark v. Community for Creative Non-Violence, supra at 295; Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986) (regulations enacted “for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment”). “The government’s purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.” Ward v. Rock Against Racism, supra, citing Renton v. Playtime Theatres, Inc., supra at 47-48. See Boston v. Back Bay Cultural Ass’n, supra at 179 (applying Ward analysis). The bill’s content neutrality is confirmed by the fact that the buffer zone applies regardless of the viewpoint being expressed. Cf. Benefit v. Cambridge, 424 Mass. 918, 923-924 (1997) (statute criminalizing requests for charity from beggars is content-based regulation).
A content-neutral statute which restricts speech is constitutional under the First Amendment if it is “narrowly tailored to serve a significant government interest and . . . leave[s] open ample alternative channels of communication.” Frisby v. Schultz, 487 U.S. 474, 482 (1988), quoting Perry Educ. Ass’n v. Perry *1040 Local Educators’ Ass’n, 460 U.S. 37, 45 (1983). See Ward v. Rock Against Racism, supra at 798-799; Madsen v. Women's Health Ctr., Inc., 512 U.S. 753 (1994) (Ward test applicable to content-neutral statutes, but heightened standard applies to content-neutral injunctions).
The bill recites the following four interests: (1) to increase the public safety in and around reproductive healthcare facilities; (2) to maintain the flow of traffic and prevent congestion around reproductive health care facilities; (3) to enact reasonable time, place, and manner restrictions to reconcile and protect both the First Amendment rights of persons to express their views near reproductive health care facilities and the rights of persons seeking access to those facilities to be free from hindrance, harassment, intimidation, and harm; and (4) to create an environment in and around reproductive health care facilities which is conducive toward providing safe and effective medical services, including surgical procedures, to its patients. The bill’s preamble points to the “many blockades, disturbances and even violence” surrounding reproductive health care facilities, including the December 30,1994, shootings at two reproductive health services facilities that killed two people.[4] Testimony offered at the hearings on Senate No. 148 described how advocates of both sides of one of the nation’s most divisive issues frequently meet within close proximity of each other in the areas immediately surrounding the State’s clinics, in what can and often do become congested areas charged with anger.[5]
We conclude that the interests stated in the bill are substantial governmental interests. See Planned Parenthood League of Mass. v. Bell, 424 Mass. 573, 584, quoting Schenck v. Pro-Choice Network of W.N.Y., 519 U.S. 357 (1997), and Madsen v. Women’s Health Ctr., Inc., 512 U.S. 753 (1994).
*1041 In addition to serving a substantial governmental interest, the bill must also be “narrowly tailored” to serve these legitimate interests, although “it need not be the least restrictive or the least intrusive means of doing so.” Ward v. Rock Against Racism, supra at 799. The Supreme Court and other Federal courts have unanimously struck down “floating” buffer zones and upheld “fixed” ones as being “narrowly tailored” under the First Amendment.[6] See, e.g., Schenck v. Pro-Choice Network of W.N.Y., supra at 379-380; Madsen v. Women’s Health Ctr., Inc., supra; Edwards v. Santa Barbara, 150 F.3d 1213 (9th Cir. 1998) (portion of statute creating fixed buffer zone of eight feet upheld, while portion of statute creating floating buffer zone of eight feet vacated). As the Supreme Court stated in Schenck v. Pro-Choice Network of W.N.Y., supra at 378, floating buffer zones are problematic because, by their nature, they are difficult for a protester to comply with, and “[t]his lack of certainty leads to a substantial risk that much more speech will be burdened.” There is no such risk inherent in the fixed buffer zone that would be established by Senate No. 148.[7]
The “fixed” clinic buffer zone at issue in Senate No. 148 is substantially comparable to other “fixed” clinic buffer zones that either we or the Federal courts have previously upheld under either the Ward standard or the heightened standard applicable to injunctions. See Schenck v. Pro-Choice Network of W.N.Y., supra at 380 (injunction establishing fixed buffer zone of fifteen feet upheld); Madsen v. Women’s Health Ctr., Inc., supra at 768-771 (upholding injunction establishing buffer zone of thirty-six feet); Planned Parenthood of Mass. v. Bell, supra at 583-584 (upholding injunction establishing fixed buffer zone of fifty feet around clinic); Edwards v. Santa Barbara, supra (statute creating fixed buffer zone of eight feet upheld); Lucero v. Trosch, 121 F.3d 591, 605-606 (11th Cir. 1997) (injunction establishing fixed buffer zone of twenty-five feet upheld).
Further, Senate No. 148 leaves open ample alternative means *1042 of communication. Demonstrators may still engage in all forms of protest as they previously have done, but are simply constrained to do so outside the buffer zone. See Burson v. Freeman, 504 U.S. 191, 210 (1992) (upholding buffer zone of one hundred feet around polling places). The statute allows protesters to display signs or objects without limitation as to size or content. As a result, those who are trying to communicate to persons entering or leaving health care facilities can certainly do so from the edge of a zone of twenty-five feet. To be sure, they cannot place a leaflet directly in the hand of a patient within the zone, but they can certainly show that they have one to offer, and an interested patient can walk over easily to take it. See Heffron v. International Soc ’y for Krishna Consciousness, Inc., 452 U.S. 640, 654-655 (1981) (rejecting challenge to prohibition on leafletting and solicitation on State fair grounds except at designated booths, given ability by religious group to express views orally throughout fair grounds, and to leaflet and solicit at booth or outside fair grounds).
Finally, we address whether Senate No. 148 impermissibly infringes on the right to freedom of association. In Timmons v. Twin Cities Area New Party, 520 U.S. 351, 363-364 (1997), quoting Norman v. Reed, 502 U.S. 279, 288-289 (1992), the Supreme Court held that so long as the burdens imposed on one’s associational rights are not “severe,” the State’s asserted interests need only be “sufficiently weighty to justify the limitation” imposed on the speaker. Senate No. 148 does not impose a “severe” burden on a protestor’s right to assemble. Those who wish to gather to demonstrate would remain free to do so outside a buffer zone of twenty-five feet. The governmental interests underlying Senate No. 148 are sufficiently weighty to justify a buffer zone of twenty-five feet, and thus the bill would not violate the right to assemble peaceably under the First Amendment.
The answer to the question is, “No.”
The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the 24th day of January, 2000.
Margaret H. Marshall
Ruth I. Abrams
Neil L. Lynch
*1043 John M. Greaney
Roderick L. Ireland
Francis X. Spina
Judith A. Cowin

We invited interested parties to submit briefs which were due on December 8, 1999. Briefs were received from State Senator Cynthia Stone Creem; the Attorney General of the Commonwealth and the District Attorneys for Middle-sex, Norfolk, and Suffolk Counties; Planned Parenthood League of Massachusetts, Inc., Women’s Bar Association of Massachusetts, League of Women Voters of Massachusetts, Massachusetts Religious Coalition for Reproductive Choice — Massachusetts Chapter, National Council of Jewish Women, American Association of University Women — Massachusetts Chapter, National Abortion Federation, Physicians for Reproductive Choice and Health, NOW Legal Defense and Education Fund, Alternative Medical Care of Massachusetts, Womancare/REPRO Associates, Four Women, Inc., Mass. NARAL, Massachusetts Women’s Political Caucus, Republican Pro-Choice Coalition, Feminist Majority Foundation, State Senator Susan C. Fargo, State Representative Ellen Story, and State Representative Paul M. Demakis; Robert A. Huff, Executive Director, Christian Counseling Services of *1036 Cape Cod, Inc.; Operation Rescue Boston; American Civil Liberties Union of Massachusetts; State Senator Marian Walsh; and Catholic Action League.

In pertinent part, Senate No. 148 reads as follows:
“SECTION 2. Chapter 266 of the General Laws is hereby amended by inserting after section 120E the following section:
“(a) For the purposes of this section, “reproductive health care facility” shall mean a place, other than within a hospital, where abortions are offered or performed.
“(b) (1) Except for those listed in subsection (2) below, no person shall, during business hours of a reproductive health care facility, knowingly enter or remain in the following area of private property of a reproductive health care facility or public right-of-way:
“(A) the area within twenty-five (25) feet of any portion of an entrance to, exit from, or driveway of a reproductive health care facility; and
“(B) the area within the rectangle created by extending the outside boundaries of any entrance to, exit from, or driveway of, a reproductive health care facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway.
“(2) The provision of subsection (1) of this paragraph shall not apply to the following:
“(A) persons entering or leaving such facility;
“(B) employees or agents of such facility acting within the scope of their employment;
“(C) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and
“(D) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.
“(c) Whoever knowingly violates this section shall be punished, for the first offense, by a fine of not more than one thousand dollars or not more than six months in a jail or house of correction or both, and for each subsequent offense by a fine of not less than five hundred dollars and not more than five thousand dollars or not more than two and one-half years in a jail or house of correction or both.
“A person who knowingly violates this section may be arrested without a *1037 warrant by a sheriff, deputy sheriff, or police officer.
“(d) Any reproductive health care facility or any person whose rights to provide or obtain reproductive health care services have been interfered with by a violation of this section may commence a civil action for damages or injunctive and other equitable relief, including the award of compensatory and exemplary damages. Said civil action shall be instituted either in the superior court for the county in which the conduct complained of occurred, or in the superior court for the county in which any person or entity complained of resides or has a principal place of business. An aggrieved person or entity which prevails in an action authorized by this paragraph, in addition to other damages, shall be entitled to an award of the costs of the litigation and reasonable attorney’s fees in an amount to be fixed by the court.
“(e) A criminal conviction pursuant to the provision of this section shall not be a condition precedent to maintaining a civil action pursuant to the provision of this section.
“SECTION 3. The provisions of this act shall be deemed severable, and if any provision of this act is adjudged unconstitutional or invalid, such judgment shall not affect other valid provisions hereof.”

The question addressed to us also inquires about arts. 16 and 19 of the Massachusetts Declaration of Rights, in regard to issues of free speech and assembly regarding buffer zones surrounding reproductive health care facilities. The analysis under arts. 16 and 19 is the same as that under the First Amendment to the Federal Constitution. See, e.g., Walker v. Georgetown Hous. Auth., 424 Mass. 671, 674 (1997) (interpreting cognate provisions of the Massachusetts Constitution as coextensive with First Amendment); Colo v. Treasurer & Receiver Gen., 378 Mass. 550, 558 (1979) (same). But see Batchelder v. Allied Stores Int’l, Inc., 388 Mass. 83, 87 (1983) (United States Supreme Court has made clear that “a State may ‘adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution,’ ’’quoting PruneYard Shopping Center v. Robins, 447 U.S. 74, 81 [1980]).

See Abortion Violence Hits Home: Gunman Opens Fire in Brookline Clinics, Kills 2 and Wounds 5, Boston Globe, December 31, 1994, at 1.

We also note that clinics or “[h]ospitals, after all, are not factories or mines or assembly plants. They are hospitals, where human ailments are treated, where patients and relatives alike often are under emotional strain and worry, where pleasing and comforting patients are principal facets of the day’s activity.” Madsen v. Women’s Health Ctr., Inc., 512 U.S. 753, 772 (1994), quoting NLRB v. Baptist Hosp., Inc., 442 U.S. 773, 783-784 n.12 (1979). Further, “any person bellowing into the entrance of a medical facility creates a noxious and unwelcome condition inside, regardless of what he or she is shouting.” Planned Parenthood League of Mass. v. Bell, 424 Mass. 573, 581 (1997).

A “floating” or “bubble” buffer zone does not have a fixed point of reference, but rather follows a moving object or person.

We recognize that the United States Supreme Court has granted certiorari to review a decision of the Supreme Court of Colorado upholding Colorado’s clinic buffer zone statute. See Hill v. Thomas, 973 P.2d 1246 (Colo.), cert. granted sub nom. Hill v. Colorado, 120 S. Ct. 10 (1999). The statute at issue in Colorado establishes a “floating” buffer zone whereas Senate No. 148 creates a “fixed” buffer zone.