### ANSWER OF THE JUSTICES TO THE GOVERNOR.

*Massachusetts Turnpike Authority. Constitutional Law,* Opinions of the Justices. *Supreme Judicial Court,* Opinions of the Justices. *Governor.*

This court declined to answer questions submitted by the Governor concerning the Governor's power and authority to "de-designate" the Chairperson of the Massachusetts Turnpike Authority for certain misconduct, where the questions, which sought approval from this court for what was essentially a basic employment decision directly implicating the rights of one individual, were not presented in the context of "solemn occasions," as required by Part II, c. 3, art. 2, of the Massachusetts Constitution, as amended by art. 85 of the Amendments, in that the Governor had not established or identified a present duty necessitating imminent action on his part pursuant to the Constitution or statute. [1202-1207]

On June 29, 2005, the Justices submitted the following response to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit the following response to the questions set forth in the Governor's request dated March 15, 2005.[1]

The questions as to which the Governor has requested our opinion are:

"1. Does the Governor have the power and authority to de-designate the Chairperson of the Massachusetts Turnpike Authority for conduct consisting of mismanagement, neglect of duty, and/or fiscal irresponsibility where the Chairperson will remain a voting member of the Turnpike and where the 'cause' does not involve 'a difference of opinion over policy'?

---

[1]We invited interested parties to submit briefs which were due on April 19, 2005. Briefs were received from Governor Mitt Romney; Matthew J. Amorello, Chairman, Massachusetts Turnpike Authority; William Smith, General Counsel, Massachusetts Convention Center Authority; and Garrick F. Cole.

"2. Assuming that this Court agrees that the standard of 'cause' required to de-designate the Chairperson is lower than the standard of 'cause' required to remove a member of the Turnpike, should the Governor's decision to de-designate likewise be reviewed under a more deferential standard of review?"

The undersigned Justices respectfully decline to answer the questions. While the undersigned Justices agree with the Governor that these are "important questions of law," particularly as taxpayer money has funded the Central Artery/ Tunnel Project (Project) in part, the Constitution does not permit us to answer even important questions unless they are presented to us in the context of "solemn occasions." See *Answer of the Justices*, 364 Mass. 838, 841 (1973). The present dispute does not present such an occasion.

The Massachusetts Constitution requires the Justices of the Supreme Judicial Court to give opinions to the Governor, the Legislature, or the Executive Council "upon important questions of law, and upon solemn occasions." Part II, c. 3, art. 2, of the Massachusetts Constitution, as amended by art. 85 of the Amendments. The constitutional obligation of the Justices is "to render opinions only when they are properly required, and to abstain from answering questions of law not required under this provision." *Opinion of the Justices*, 430 Mass. 1205, 1207 (2000). See *Answer of the Justices*, 319 Mass. 731, 733-734 (1946) ("questions bearing only upon the wisdom and expediency of proposed legislation — and not upon the power and authority of the Legislature to pass such legislation — cannot properly be answered by the Justices").

A "solemn occasion" exists "when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes." *Opinion of the Justices*, 430 Mass. at 1207, quoting *Answer of the Justices*, 364 Mass. at 844. The Justices have construed this provision to mean that opinions are required "only respecting pending matters in order that assistance may be gained in the performance of a present duty." *Answer of the Justices*, 211 Mass. 630, 631 (1912). See *Answer of the Justices*, 426 Mass. 1201, 1203 (1997). See also *Answer of the Justices*, 373 Mass. 898, 901 (1977) ("Where there has been no duty imminently confronting the body requesting the advisory opinion . . . we have said that

it was not within our province or our power to render such advice"). When the opinion of the Justices "would not assist the requesting body in carrying out a present duty . . . no solemn occasion exists and the Justices are constitutionally constrained from rendering an advisory opinion regardless of the importance of the particular questions." *Answer of the Justices*, 426 Mass. at 1203-1204, citing *Answer of the Justices*, 406 Mass. 1220, 1224 (1989). See *Answer of the Justices*, 364 Mass. at 844-845.

In addition to the "present duty" limitation on the power and authority of the Justices to render an advisory opinion is the further limitation that the Justices not answer abstract questions of law or hypothetical questions. See *Answer of the Justices*, 438 Mass. 1208, 1210 (2002); *Answer of the Justices*, 426 Mass. at 1204. The Constitution does not "require [the Justices] to give opinions upon abstract questions to which answers [are] not made necessary by any immediately existing occasion." *Opinion of the Justices*, 324 Mass. 736, 745 (1949). Moreover, the Justices have "repeatedly said that a request for an opinion regarding the effect or construction of a statute is not an 'important question of law' or a 'solemn occasion' within the meaning of the Constitution, Part II, c. 3, art. 2." *Opinions of the Justices*, 383 Mass. 895, 915 (1981) (declining to answer questions as to effect of proposed Senate bill and its future application). See *Opinions of the Justices*, 427 Mass. 1211, 1214-1215 (1998). Cf. *Opinion of the Justices*, 397 Mass. 1201, 1206-1207 (1986), quoting *Opinion of the Justices*, 314 Mass. 767, 771 (1943) ("Questions as to the construction or constitutionality of existing statutes do not present a 'solemn occasion' . . . however . . . an exposition of existing law may be appropriate 'in answering specific questions as to the power and authority of the Legislature to enact a pending bill,' " particularly where, if requirements are unconstitutional, considerable time, effort, and public funds would be expended needlessly).

The "solemn occasion" provision of the Constitution is construed strictly. See *Answer of the Justices*, 362 Mass. 914, 916 (1973). "Not only does the Constitution define the extent of the duty of the Justices to furnish opinions, but it also limits their right to express them." *Id*. See *Answer of the Justices*, 214 Mass. 602, 603 (1913) ("By travelling outside these [constitutional] bounds injustice might be done to private litigants and to

public interests in an attempt by the Justices to give opinions without the benefit of argument as to the law and an opportunity to vindicate their views to those whose rights might be affected"). See also *Answer of the Justices*, 150 Mass. 598, 601 (1890) ("An opinion rendered on the construction of [existing] statutes might seriously, even if indirectly, affect private rights, and the occasion does not appear to us to be one of those contemplated by the Constitution"). "Where private rights are involved . . . it would normally be inappropriate for [the Justices] to give an opinion on a matter of statutory construction which could be brought to the court by the usual litigation process, initiated by the parties in interest." *Opinion of the Justices*, 363 Mass. 889, 898 (1973) (Justices put aside doubts as to whether request constituted appropriate occasion for advisory opinion, in light of particular circumstances, where answers were *not* adverse to private rights and were directed solely to questions of law of continuing importance).[2] See *Answer of the Justices*, 122 Mass. 600, 603-604 (1877) (Justices declined to consider judicial question that could not be definitively or justly decided until matter was presented and argued by counsel in ordinary course of administration of justice).

The Justices must adhere strictly to the jurisdictional boundaries established by Part II, c. 3, art. 2, in order to safeguard the separation of powers embodied in art. 30 of the Massachusetts Declaration of Rights. See *Answer of the Justices*, 426 Mass. at 1203; *Answer of the Justices*, 373 Mass. at 901; *Answer of the Justices*, 362 Mass. at 917. "The Constitution expressly prohibits each of the three departments of government from intermeddling with either of the others. Declaration of Rights, art. 30. This applies as strongly to the judicial depart-

---

[2]In *Opinions of the Justices*, 383 Mass. 895, 915 (1981), when considering questions as to the effects of a proposed Senate bill relating to tidelands lying within Boston, five Justices stated that they had "no means of summoning before [them] the parties who may be affected by [their] opinion, and [they did] not have the benefit of argument based on a factual record. See *Answer of the Justices*, 122 Mass. 600, 603 (1877). 'Although such an opinion has not the force of an adjudication, yet it is, in a sense, a prejudgment of the question[s] proposed, and would usually be followed by the subordinate judicial officers of the Commonwealth; and any [individual] interested in the question[s] might well feel that his rights had been impaired by it without giving him an opportunity to be heard.' *Answer of the Justices*, 148 Mass. 623, 625 (1889)."

ment as to either of the others. It acts as an inhibition upon the Justices giving opinions as to the duties of either the executive or legislative department except under the Constitution."[3] *Answer of the Justices*, 214 Mass. at 604.

Periodically, we "cast aside" our "doubts as to the existence of a solemn occasion" and give advisory opinions despite our doubts. *Opinion of the Justices*, 330 Mass. 713, 727 (1953). See *Opinion of the Justices*, 374 Mass. 864, 866-867 (1977); *Opinion of the Justices*, 363 Mass. at 898. In these cases, we explicitly stated that our willingness to give advisory opinions arose from the particular circumstances presented and was not to be construed as establishing a practice or departing from prior constitutional constraint. See *Opinion of the Justices*, 374 Mass. at 867; *Opinion of the Justices*, 363 Mass. at 898. See also *Opinion of the Justices*, 269 Mass. 611, 618-619 (1929). The undersigned Justices decline to follow these cases here where the undersigned Justices have no doubts as to whether or not a solemn occasion exists.

Pursuant to G. L. c. 81A, § 2, the Governor has the authority to "designate one of the members [of the Massachusetts Turnpike Authority] as chairperson who shall serve as such during his term in office." The chairperson receives an annual salary of $205,000, while the remaining four members each receive an annual salary of $25,852. See G. L. c. 81A, § 2. Nothing in G. L. c. 81A explicitly provides for the removal and reassignment of the chairperson to the position of "member." In his request for an advisory opinion, the Governor contends that the

---

[3]Where the Attorney General is a party to the underlying intra-executive dispute, the Governor is deprived of the Attorney General's disinterested legal advice. See *Answer of the Justices*, 364 Mass. 838, 842 (1973). However, where the Attorney General is not one of the disputants, he is available on request to provide legal advice to the Governor. See *id.* See also G. L. c. 12, § 9 (Attorney General shall aid and advise General Court); *Answer of the Justices*, 373 Mass. 867, 870 (1977) ("The Legislature has made ample provision for the advice by the Attorney General as to usual legal difficulties presenting themselves either to the House of Representatives or to the Senate or to the Governor and Council"). "Considerations of judicial economy as well as sensitivity to the constitutional requirement of the separation of powers (art. 30 of the Declaration of Rights of the Massachusetts Constitution) suggests that the Governor should look to the Attorney General as his primary legal advisor before submitting a request to the Justices." *Answer of the Justices*, 364 Mass. at 842. Here, it is unclear whether the Governor has sought the legal advice of the Attorney General concerning the questions he now asks this court.

chairperson of the Massachusetts Turnpike Authority (MTA) needs to be "de-designated" as chairperson and relieved of his day-to-day executive responsibilities for cause. The Governor asserts that, since taking office three years ago, the chairperson has not performed his job competently, and that his mismanagement, neglect of duty, and fiscal irresponsibility with respect to the Project have jeopardized "the performance of an essential governmental function," G. L. c. 81A, § 1, and are presently threatening the public good. The Governor has requested an advisory opinion on this "solemn occasion" so that he "may carry out [his] duties as Governor consistent with the Constitution and laws of the Commonwealth." More specifically, he seeks an opinion from the Justices that his interest in the MTA extends to meaningful oversight of the chairperson's performance as the chief executive officer of the MTA and encompasses the power to replace the chairperson who will, in turn, assume the position of "member" of the MTA, retaining all of his policy making authority. Cf. *Kaplan* v. *Sullivan*, 290 Mass. 67, 70-71 (1935) (where office of chairman not separate and distinct from office of member of finance commission of Boston, Governor had power to replace chairman by designating new one). The Governor has concluded that his authority to take such action against the chairperson is in doubt, and that the need for advice from the Justices is compelling in light of concerns about public safety and fiscal responsibility.

Although the Governor frames his proposal to de-designate the chairperson as a "solemn occasion" requiring an advisory opinion from the Justices, his request does not fall within the scope of that term. While the Governor plainly would like to establish new executive management for the MTA, he has not established or identified a "present duty" necessitating imminent action on his part other than a general desire to "secure the public's safety and interests" which, while significant and laudatory, encompasses a wide range of actions that could be taken by the Governor now and in the future. The Justices have construed a present duty as an imminent obligation to act pursuant to the Constitution or statute. See *Answer of the Justices*, 373 Mass. 898, 901 (1977); *Answer of the Justices*, 364 Mass. 838, 844-845 (1973). That is not present here.

Fundamentally, the Governor is asking the Justices to consider the purported tenure protection afforded to the chairperson by G. L. c. 81A, § 2, to analyze the standards for removal of MTA

members enunciated in *Levy* v. *Acting Governor*, 435 Mass. 697 (2002), and *Levy* v. *Acting Governor*, 436 Mass. 736 (2002), and to conclude that he has the authority to de-designate the chairperson. The Governor is seeking approval from the Justices for what is essentially a basic employment decision. As we have stated, a request for an advisory opinion regarding the construction of an existing statute, and, we add, existing case law, does not constitute a "solemn occasion" within the meaning of the Constitution, Part II, c. 3, art. 2. Moreover, the Governor's request for an advisory opinion directly implicates the rights of one individual, the chairperson. Consistent with our established practice, we refrain from rendering advisory opinions which might "seriously, even if indirectly, affect private rights." *Answer of the Justices*, 375 Mass. 822, 826 (1978), quoting *Answer of the Justices*, 150 Mass. 598, 601 (1890). See *Answer of the Justices*, 373 Mass. 867, 872 (1977); *Opinion of the Justices*, 363 Mass. 889, 898 (1973). This matter is one which, if necessary, could be brought to the court by the usual litigation process, initiated by the parties in interest.

"There is always present the desire on the part of the Justices to comply with the request for an opinion under this clause of the Constitution [Part II, c. 3, art. 2] out of respect to the wishes of a co-ordinate department of government, but the duty of conformity to the meaning of this clause is a continuing one and cannot be avoided." *Answer of the Justices*, 290 Mass. 601, 603 (1935).

Accordingly, the undersigned Justices respectfully decline to answer the questions of the Governor. We express no opinion as to the merits of those questions.

The foregoing answer is submitted by the undersigned Justices subscribing hereto on the 29th day of June, 2005.

> JOHN M. GREANEY
>
> RODERICK L. IRELAND
>
> FRANCIS X. SPINA
>
> JUDITH A. COWIN