OPINION OF THE JUSTICES TO THE COUNCIL.

*Constitutional Law*, Delegation of powers, Separation of powers of government, Opinions of the Justices. *Public Officer. Governor. Council. Supreme Judicial Court*, Opinions of the Justices.

The Governor validly issued a revocable executive order establishing a Judicial Nominating Commission "to advise" him with respect to "all appointments of judges;" the Governor's responsibility under Part II, c. 2, § 1, art. 9, of the Massachusetts Constitution to nominate and appoint all judicial officers was not unlawfully delegated, surrendered, abandoned, or unduly restricted notwithstanding a commitment in the order to nominate only a person named in a list recommended by the commission, and the Council is required to act upon judicial nominations submitted by the Governor in accordance with the provisions and procedures of the order. [873-876]

Membership on the Judicial Nominating Commission by appointment of the Governor pursuant to his executive order, which limited the functions of the commission to gathering information and making recommendations, does not constitute holding civil or public office [876]; it is

without consequence that commission members took the oath of office and signed the record book for public officers [876-877].

In the executive order establishing the Judicial Nominating Commission, a provision that members of the commission "shall be reimbursed for customary and usual expenses directly incurred in the performance of their duties" was within the constitutional competence of the Governor; reimbursement would be dependent upon an appropriation. [877]

In the executive order establishing the Judicial Nominating Commission, a provision that the commission "adopt and make public procedures and standards for the conduct of its affairs" was within the constitutional competence of the Governor. [878]

The Justices asked to be excused from answering a hypothetical question propounded by the Council involving an asserted executive privilege of the Governor. [879-880]

On September 9, 1975, the Justices submitted the following answers to questions propounded to them by the Council.

To the Honorable Council of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully reply to the questions set forth in an order adopted by the Council on July 30, 1975, and transmitted to us on August 5, 1975. The order raises questions concerning Executive Order No. 114 (Executive Order) which provides for the establishment of a Judicial Nominating Commission (Commission). A copy of the Executive Order was transmitted to us with the Council's order of July 30.

In introductory paragraphs, the Executive Order states, among other things, that "under the Constitution and laws the Governor is charged with the responsibility of nominating and appointing, with the advice and consent of the Executive Council, all judicial officers," and that "the high quality of judicial officer appointments can best be assured by the use of a non-partisan judicial nominating commission composed of outstanding laymen and lawyers in aid of the discretion reposed in the Governor." The Executive Order provides for a judicial nominating commis-

sion of eleven members "to advise the Governor with respect to all appointments of judges and clerks of court, and the designation of chief justices of all courts." The Executive Order further provides that "[a] member may be removed by the Governor upon recommendation of the Commission by vote of at least seven of its members that cause exists." The Executive Order also states that the members of the Commission are not to be compensated "but shall be reimbursed for customary and usual expenses directly incurred in the performance of their duties." "All records and deliberations with respect to persons under consideration as nominees or prospective nominees shall be held in confidence by the Commission, but shall be available to the Governor and the Governor's representatives." For each vacancy the Commission is directed to submit to the Governor not less than three names of qualified persons willing to serve. The Governor may refuse to nominate anyone from that list and may require the Commission to submit a second list of not less than three other qualified persons willing to serve. The Executive Order states that the Governor shall nominate a person from either the original or supplementary list and that he shall publicly announce the name of the person he intends to nominate at least fourteen days prior to the date of the nomination. The Executive Order states that it "shall continue in effect until amended, superseded or terminated by subsequent Executive Order."

The order of the Council states that the Council has expressed grave doubt about the constitutionality of the Executive Order; that the Governor has appointed the Commission and has personally administered the oath of office prescribed by Part II, c. 6, art. 1, of the Constitution of the Commonwealth; that each member of the Commission has signed the record book maintained for public officers; that a nominee for each of three vacancies on District Courts has been submitted to the Council, the first nominees to be named in accordance with the terms of the Executive Order; and that because of grave doubts about the constitu-

tionality of the Executive Order, the Council requests the opinion of the Justices of this court on certain questions relative to that order.

The questions propounded are:

"1. Is the Executive Council, in accordance with the oath of office prescribed in Part the Second, Chapter VI, Article I of the Constitution of the Commonwealth of Massachusetts, solemnly subscribed and sworn to by all of its members, constitutionally required to accept and act upon the names of Guy Volterra, Allan McGuane, and Philip J. Murphy as nominees for Justices of The First District Court of Bristol, The District Court of Franklin, and The District Court of Fitchburg, respectively, pursuant to the provisions of Part the Second, Chapter II, Section I, Article IX of the Constitution of the Commonwealth of Massachusetts, such names having been determined by His Excellency, Michael S. Dukakis, Governor of the Commonwealth, in accordance with the provisions and procedures of Executive Order No. 114, whose provisions and procedures the Executive Council believes to be unlawful in whole or in part as violative of Part the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section I, Article IV; Part the Second, Chapter I, Section III, Articles VII, X, and XI; Part the Second, Chapter II, Section I, Articles I, IX, and XI; and Article LXIII of the Articles of Amendment of the Constitution of the Commonwealth of Massachusetts as well as General Laws, Chapter 30, Section 9?

"2. Is it constitutionally competent for the Governor to create civil or public offices not established by the Constitution or duly enacted statutes of the Commonwealth of Massachusetts merely through the execution, promulgation, and implementation of Executive Order No. 114 providing for the creation of an eleven member Judicial Nominating Commission, without violating Part

the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section I, Article IV; and Part the Second, Chapter II, Section I, Article I of the Constitution of the Commonwealth of Massachusetts?

"3. If the answer to question 2 is in the affirmative, and the members of the Judicial Nominating Commission are accordingly deemed to be civil or public officers, is it constitutionally competent for the Governor to relinquish any part of the power, to abandon any part of the duty, or to surrender any part of the exercise of discretion exclusively reposed in him under the provisions of Part the Second, Chapter II, Section I, Article IX of the Constitution, with respect to the nomination and appointment of all judges and clerks of court, and the designation of chief justices of all courts, without violating said Article IX, by binding himself in accordance with the provisions of Section 5 of Executive Order No. 114 only to the selection of those individuals for judicial office whose names appear on the list or lists of 'qualified persons willing to accept the office' and transmitted thereunder to him?

"4. If the answer to question 2 is in the negative, and the members of the Judicial Nominating Commission are accordingly not deemed to be civil or public officers, is it constitutionally competent for the Governor to delegate any part of the power, duty, and discretion exclusively reposed in him by Part the Second, Chapter II, Section I, Article IX of the Constitution, with respect to the nomination and appointment of all judges and clerks of court, and the designation of chief justices of all courts, to a private group of citizens by binding himself in accordance with the provisions of Section 5 of Executive Order No. 114 only to the selection of those individuals for judicial office whose names appear on the list or lists determined by the Judicial Nominating Commission to be 'qualified persons willing to accept the office' and transmitted thereunder to him without violating said

Article IX and Part the First, Article XXX of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts?

"5. Is it constitutionally competent and otherwise lawful for the Governor to surrender, abdicate or circumscribe his power of removal of members of the Judicial Nominating Commission by requiring in accordance with Section 3 of Executive Order No. 114 as a condition precedent to any such removal the 'recommendation of the Commission by vote of at least seven of its members that cause exists' to warrant or justify such removal without violating Part the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section I, Article IV; and Part the Second, Chapter II, Section I, Article I of the Constitution of the Commonwealth of Massachusetts and the provisions of General Laws, Chapter 30, Section 9?

"6. Is it constitutionally competent for the Governor to order, in accordance with the provisions of Section 3 of Executive Order No. 114, that the members of the Judicial Nominating Commission 'shall be reimbursed for customary and usual expenses directly incurred in the performance of their duties' without violating Part the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section III, Article VII; Part the Second, Chapter II, Section I, Article XI; and Article LXIII of the Articles of Amendment of the Constitution of the Commonwealth of Massachusetts?

"7. Is it constitutionally competent for the Governor to order, in accordance with the provisions of Section 4 of Executive Order No. 114, that the Judicial Nominating Commission adopt and make public procedures and standards for the conduct of its affairs, without violating Part the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section I, Article IV; and Part the Second, Chapter II, Section I, Article I of the Constitution of the Commonwealth of Massachusetts?

"8. Is it constitutionally competent for the Governor, in accordance with the various provisions of Executive Order No. 114, to alter or vary substantially the constitutional provisions and established procedures with respect to the nomination and appointment of all judicial offices as set forth in Part the Second, Chapter II, Section I, Article IX of the Constitution by ordering the establishment of a Judicial Nominating Commission, empowering it as prescribed therein, and mandating its structure and procedures including the prohibition that no more than six members of the Judicial Nominating Commission shall be members of the same political party at the time of their appointments; the restriction that no member of the Judicial Nominating Commission shall hold any appointed or elected office during his or her term; the requirement that with respect to all vacancies to be filled in the Boston Municipal Court, any District Court, any Probate Court, any Juvenile Court, any Housing Court, or any other local court subsequently established, at least one public hearing shall be held within the jurisdiction to determine what particular qualifications, if any, may be needed; the provision that the Judicial Nominating Commission with respect to all other vacancies exercise its discretion to determine whether or not a public hearing or hearings shall be held; the requirement that the announcement of the name of the person he intends to nominate be disclosed at least 14 days prior to the date of such nomination; and the prohibition against any member of the Judicial Nominating Commission being considered as a nominee so long as he or she is a member and for a period of two years thereafter without violating said Article IX; Part the First, Article XXX of the Declaration of Rights; Part the Second, Chapter I, Section I, Article IV; and Part the Second, Chapter II, Section I, Article I of the Constitution of the Commonwealth of Massachusetts?

"9. Is it constitutionally competent for the Governor, in accordance with the provisions of Section 4 of Executive Order No. 114, to order that 'all records and deliberations with respect to persons under consideration as nominees or prospective nominees shall be held in confidence' by the Judicial Nominating Commission and access to said records and deliberations shall be restricted exclusively 'to the Governor and the Governor's representatives' thus precluding the disclosure of relevant information to the Executive Council without violating the constitutional powers conferred upon the Governor and Council under Part the Second, Chapter I, Section I, Articles X and XI to compel the production of records and the testimony of witnesses on matters of the qualification and fitness for judicial office of the nominees for judicial office presently submitted to the Executive Council and pending before it?"[1]

In response to a request for briefs we have received briefs from the Governor; the Attorney General; the Council; the Massachusetts Bar Association; the Massachusetts Law Reform Institute, joined by the Massachusetts Council for Public Justice, Inc.; and Mr. Richard K. Donahue, a member of the Massachusetts bar on his own behalf. All argued in support of the constitutionality of the Governor's judicial selection procedure except the Council. The subject of "nonpartisan merit selection plans" for judicial appointments has received increasing attention recently. See, e.g., Ashman and Alfini, The Key to Judicial Merit Selection: The Nominating Process (American Judicature Society 1974).

The first question asks whether the Council is required to accept and act on three judicial nominations which have

---

[1]Part II, c. 1, § 1, has no arts. 10 and 11. We believe the intended reference is to Part II, c. 1, § 3, arts. 10 and 11.

been made by the Governor in accordance with the provisions and procedures of the Executive Order. It lists various constitutional provisions and one statutory provision which the Council believes are violated by the Executive Order. Several issues apparently included within this broad question are raised with greater specificity in other questions put to us. We respond to those specific questions subsequently and deal with the first question solely as raising the basic question whether the Governor has the constitutional right to establish a judicial nominating commission with duties of the sort prescribed in the Executive Order. We think that he does.

The authority of the Governor to nominate and appoint judicial officers is conferred by Part II, c. 2, § 1, art. 9, of the Constitution of the Commonwealth, which provides as follows: "All judicial officers . . . shall be nominated and appointed by the governor, by and with the advice and consent of the council; and every such nomination shall be made by the governor, and made at least seven days prior to such appointment." By this article the Governor must nominate and appoint all judicial officers personally. Like the Legislature, the Governor has broad discretion to select the means he will use in executing a constitutional duty. See *Attorney Gen.* v. *Brissenden,* 271 Mass. 172, 181 (1930). Like the Legislature and the Judiciary, the Governor possesses incidental powers which he can exercise in aid of his primary responsibility. See *Attorney Gen.* v. *Brissenden, supra,* at 177, 180-181; *Opinion of the Justices,* 279 Mass. 607, 609-610 (1932); *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 509-510 (1972). One such power is to enlist such aid as he deems necessary to investigate the availability of qualified candidates for judicial office. See *Opinion of the Justices,* 190 Mass. 616, 620 (1906); *Juggins* v. *Executive Council,* 257 Mass. 386, 389 (1926). He may exercise this power informally and privately. Or he may exercise it formally and publicly, as the Governor has done here. He may delegate this incidental authority to others as long as he does not surrender to

them his responsibility to select a candidate and to make the nomination and appointment. See *Attorney Gen.* v. *Brissenden, supra,* at 180-181; *Murphy* v. *Casey,* 300 Mass. 232, 236 (1938). See also *Opinion of the Justices,* 328 Mass. 674, 675 (1952); *Matter of Benedetto* v. *Kern,* 167 Misc. (N. Y.) 831, 837 (1938), affd. 255 App. Div. (N. Y.) 753 (1938), affd. 279 N. Y. 798 (1939).

The Governor in no way exercises legislative powers by formalizing the delegation of this ancillary executive function to a commission in an executive order. See *Advisory Opinion to the Governor,* 276 So. 2d 25, 29 (Fla. 1973). Such an act by the Governor is the exercise of an executive power inherent in the "supreme executive magistrate" as constituted by Part II, c. 2, § 1, art. 1, of our Constitution. See *Opinion of the Justices,* 302 Mass. 605, 618 (1939), where the Justices recognized the existence of executive powers inherent in the office of Governor.

The Executive Order makes plain that the Governor has not attempted to delegate his constitutional duty to the Commission. The function of the Commission, according to § 1 of the Executive Order, is "to advise the Governor." The Commission makes recommendations which are not and cannot be binding on him. *Opinion of the Justices,* 208 Mass. 610, 612-613 (1911). To be sure, the Governor has declared in the Executive Order that he will nominate only a person whose name the Commission recommends in its original or supplementary list (or in an additional supplementary list the Commission submits in the event the Council refuses to approve the first person nominated). But his constitutional duty to select the available candidate who, in his judgment, is most qualified to fill the vacancy transcends any unilateral commitment he has made in the Executive Order. As the Executive Order itself recognizes, he is at liberty to revoke it, in whole or in part, at any time. He is bound by that order only as long as he chooses to be bound. Therefore, the Governor has not delegated, surrendered, abandoned, or unduly restricted his right and duty to select any qualified person he wishes to nominate for

judicial office. The open disclosure by the Governor of the procedure by which he is to obtain advice in the selection of judicial nominees presents no constitutional problem.

For these reasons, and having in mind the answers which we will give to subsequent questions and the single issue considered by us in answering the first question, we answer question 1 affirmatively. A judicial nomination submitted to the Council by the Governor is not constitutionally infirm if that nomination has been made following the operation of the procedures described in the Executive Order.

Question 2 asks whether the Governor can create civil or public offices without violating Part II, c. 1, § 1, art. 4, concerning the authority of the General Court; Part II, c. 2, § 1, of the Massachusetts Constitution, making the Governor the "supreme executive magistrate"; and art. 30 of the Declaration of Rights, concerning the separation of powers. The question assumes that membership on the Commission constitutes a civil or public office. However, creation of civil or public offices is a legislative function (see *Commissioner of Admn.* v. *Kelley*, 350 Mass. 501, 505 [1966]; Constitution, Part II, c. 1, § 1, art. 4), which cannot be exercised by the executive branch without violating art. 30 of the Declaration of Rights. See *Opinion of the Justices*, 303 Mass. 615, 621, 623 (1939); *Opinion of the Justices*, 365 Mass. 639, 642-644 (1974). In any event, membership on the Commission could not constitute holding civil or public office because no part of the sovereign power has been delegated to the Commission; its functions are limited to gathering information and making recommendations to the Governor. *Attorney Gen.* v. *Drohan*, 169 Mass. 534, 535 (1897). *Attorney Gen.* v. *Tillinghast*, 203 Mass. 539, 543-544 (1909). *Opinion of the Justices*, 337 Mass. 777, 784-785 (1958). *Opinion of the Justices*, 347 Mass. 797, 799-800 (1964). *Parker* v. *Riley*, 18 Cal. 2d 83, 87 (1941). *Kingston Associates, Inc.* v. *LaGuardia*, 156 Misc. (N. Y.) 116 (1935), affd. 246 App. Div. (N. Y.) 803 (1936). 140 A. L. R. 1076, 1081-1087 (1942). The fact that the members of the Commission may have taken the oath of of-

fice prescribed for public officers by the Constitution and signed the record book for public officers does not make them public officers. Because the Governor cannot and has not created any civil or public office, question 2 makes an assumption which prevents us from giving an affirmative or negative answer to it.

No answer can be given to question 3 because it assumes, contrary to fact, that members of the Commission are civil or public officers and further because it assumes that we have answered the second question in the affirmative.

Question 4 assumes that we have answered question 2 in the negative and asks whether the Governor can "delegate any part of the power, duty, and discretion exclusively reposed in him" by Part II, c. 2, § 1, art. 9, to a private group of citizens without violating that article or art. 30 of the Declaration of Rights. We have already indicated that the Governor has not made an unconstitutional delegation to the Commission. We believe that we have answered the basic question intended to be asked by question 4, but because of the form of that question we are unable to give an affirmative or negative response to it. We beg to be excused from giving any further answer to questions 2, 3, and 4.

Question 6 concerns the provision that Commission members shall be reimbursed for customary and usual expenses incurred in the performance of their duties. That provision does not invalidate any judicial nomination now before the Council. If there are no appropriated funds from which reimbursement may lawfully be made to the members of the Commission, of course, the members of the Commission may not be reimbursed for their expenses. However, a judicial nomination presented pursuant to the Executive Order acquires no infirmity because it may have followed the incurring of expenses for which members of the Commission cannot be reimbursed. Recognizing that no reimbursement for expenses may be made in the absence of an appropriation, we answer question 6, "Yes."

Question 7, concerning the requirement that the Commission adopt and make public procedures and standards for the conduct of its affairs, presents no constitutional question which is separate from the constitutionality of the Commission itself. We answer question 7, "Yes."

Question 8 also raises no significant question which has not been answered in what we have already said. It recites certain provisions of the Executive Order which it is said "alter or vary substantially the constitutional provisions and established procedures with respect to the nomination and appointment of all judicial officers." The Executive Order cannot and does not alter or vary any constitutional provision nor does it alter or vary "established procedures" in a way which exceeds the constitutional authority of the Governor. Because question 8 assumes circumstances which do not exist, we are unable to give an affirmative or negative answer to it.

We believe that it would be inappropriate for us to answer questions 5 and 9 because, as to them, the requisite occasion for the furnishing of an advisory opinion does not exist. Our obligation and authority to render advisory opinions derives from Part II, c. 3, art. 2, of the Constitution, as amended by art. 85 of the Articles of Amendment. Under that article the Council may require the opinions of the Justices "upon important questions of law, and upon solemn occasions." A solemn occasion exists when the Council, having some present duty to perform, has serious doubts, under the Constitution or statutes, about its authority to act. *Answer of the Justices*, 362 Mass. 914 (1973). The answer to any question which deals with an issue which is not now before the Council would not assist the Council in executing any present constitutional responsibility of approving or refusing to approve a judicial nominee. *Opinion of the Justices*, 347 Mass. 797, 798 (1964). *Opinion of the Justices*, 363 Mass. 889, 898 (1973). *Answer of the Justices*, 364 Mass. 838, 846-847 (1973).

Question 5 concerns the provision in the Executive Order that a member may be removed by the Governor on the

recommendation of at least seven members that cause exists. Even if this provision is intended to represent the only means by which a Commission member may be removed, it is, of course, a self-imposed restraint which the Governor may remove at any time. And even if this provision may be some way in conflict with the provisions of G. L. c. 30, § 9, concerning the removal of public officers, it presents no question for the Council with respect to any judicial nominee now before it. We do not understand that any member of the Commission has been removed with or without compliance with the terms of the Executive Order. We respectfully beg to be excused from answering question 5.

The ninth question does not concern an issue which is immediately before the Council, and consequently we respectfully decline to answer it. However, because the right of the Council to subpoena records of the Commission may become important, we think this is an appropriate occasion to state certain views on the subject.

The Executive Order purports to make confidential "[a]ll records and deliberations with respect to persons under consideration" except that those "records and deliberations" shall be available to the Governor and his representatives. The relative rights of the Governor and the Council with respect to these "records and deliberations" may never become a serious issue. The Council has not yet issued any subpoena for the production of information which purportedly is made confidential by the Executive Order. Perhaps the Governor and the Commission will turn over to the Council all information to which the Council believes it is entitled in its deliberations. We think it is clear that the Council is not entitled to "records and deliberations" concerning any person other than a person who has been nominated by the Governor, because the subpoena power of the Council extends only to "matters within its authority." G. L. c. 233, § 7. The Council should not be concerned with the question whether the Governor might have or should have nominated some other particular person to fill

the judicial vacancy. Its function is to pass judgment on the person nominated. The extent to which, if at all, there may be a privilege, qualified or absolute, to decline to furnish information in the possession of the Governor or the Commission concerning a person nominated by the Governor should be considered only when and if it arises. Such an important question involving an asserted executive privilege is not one which we would want to answer in the abstract. Because the question is hypothetical at this time, it is not proper that we answer it. *Opinion of the Justices,* 347 Mass. 797, 798 (1964). *Answer of the Justices,* 364 Mass. 838, 844-847 (1973).

We believe that the Governor's judicial nominations are pending before the Council free from any constitutional defect. We answer questions 1, 6 and 7, "Yes" and, for the reasons given, beg to be excused from answering the remaining questions.

<div align="right">

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS