DONALD L. BABETS & others [1] *vs.* SECRETARY OF
HUMAN SERVICES & another. [2]

Suffolk.   May 5, 1988. — August 15, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Separation of powers. *Executive. Privileged Communication. Evidence*, Privileged communication.

The doctrine of separation of powers expressed in art. 30 of the Massachusetts Declaration of Rights does not require recognition of an asserted privilege in the Executive branch not to disclose internal documents requested in an action against the government. [233-234]

This court declined to create an asserted common law privilege in the Executive branch not to disclose internal documents requested in an action against the government. [234-239]

CIVIL ACTION commenced in the Superior Court Department on January 30, 1986.

A motion to compel production of documents was heard by *James P. Lynch, Jr.*, J., and the matter was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Joan A. Lukey*, Special Assistant Attorney General (*Patrick M. Reagan* with her) for the defendants.

*Anthony M. Doniger* (*Susan A. Hartnett & Marjorie Heins* with him) for the plaintiffs.

*Scott P. Lewis, Tamara S. Wolfson & Barbara J. Valliere*, for Massachusetts Coalition for the Homeless & others, amici curiae, submitted a brief.

[1] David H. Jean and the Reverend Kathryn Piccard. The Massachusetts Chapter of the National Association of Social Workers and Catherine Brayden were originally also named as plaintiffs, but the complaint was dismissed as to them, on the defendants' motion.

[2] The Commissioner of the Department of Social Services. The Governor of the Commonwealth was originally also named as a defendant, but the claims against him were dismissed on the defendant's motion.

*Carl Valvo*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

HENNESSEY, C.J. This matter is before us on a report, pursuant to G. L. c. 231, § 111 (1986 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974), by a Superior Court judge of his interlocutory order allowing the plaintiffs' motion to compel production of documents which the defendants contend are protected from disclosure by a "governmental privilege."[3] The judge has stayed his order pending resolution of the report. We granted the plaintiffs' application for direct appellate review, and now hold that the judge's order[4] was correct, and that there is no such privilege in Massachusetts.

The plaintiffs commenced the action below by filing a complaint requesting declaratory and injunctive relief and challenging the lawfulness of certain regulations promulgated by the Department of Social Services (DSS). The regulations, which are codified at 110 Code Mass. Regs. §§ 7.100 et seq. (1986), were attacked on the ground that they "irrationally and arbitrarily categorize foster parent applicants by marital status and sexual preference in such a way as to exclude single persons, unmarried couples and gay [i.e., homosexual] men and lesbians from equal consideration as foster parents." The plaintiffs contended that these regulations violate their State and Federal constitutional rights to equal protection, due process, freedom of association, and privacy, as well as their statutory rights under 42 U.S.C. § 1983 (1982), G. L. c. 12, § 11 (1986 ed.), and G. L. c. 214, § 1B (1986 ed.). They also contended that

---

[3] Also referred to variously as "executive privilege," *Doe* v. *Alaska Superior Court*, 721 P.2d 617 (Alaska 1986); "deliberative process privilege," *Taxation with Representation Fund* v. *Internal Revenue Serv.*, 646 F.2d 666 (D.C. Cir. 1981); *Coastal States Gas Corp.* v. *Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980); "administrative deliberation privilege" or "predecisional deliberative process privilege," *Resident Advisory Bd.* v. *Rizzo*, 97 F.R.D. 749 (E.D. Pa. 1983); and "predecisional privilege," *Mobil Oil Corp.* v. *Department of Energy*, 102 F.R.D. 1 (N.D.N.Y. 1983). For purposes of this opinion, we will, for the most part, eschew labels and refer simply to the "asserted privilege."

[4] The judge's report is as follows: "The [plaintiffs'] motion to compel production of documents is allowed. . . . The correctness of the allowance of that motion is to be reported to the Appeals Court."

the regulations violate State and Federal law requiring that foster care placements serve the best interests of the child.

The plaintiffs requested the defendants to produce certain documents relating to the process by which the policy embodied in these regulations was developed and promulgated, including internal memoranda and drafts of proposed regulations. The defendants complied with some of these requests, but refused to produce other requested documents, specifically those that, in their view, "constitute or contain information protected by the governmental privilege."

The plaintiffs then moved the court to compel the defendants to produce these documents. After hearing and in camera inspection of the disputed documents, the judge allowed this motion. In his memorandum of decision and order, the judge noted that there was merit to the defendants' position, but that he was constrained to follow existing law, and not to innovate or to create new law. He ruled that there existed under Massachusetts law no privilege that the defendant could invoke to excuse production of the requested documents. Recognizing, however, the importance of the issue, and that an appellate court might create such a privilege when squarely presented with the issue, he reported the matter of the correctness of his order, and stayed the order pending resolution of the report.

In order to present the matter in a more concrete and meaningful posture, the judge went on to make certain findings and rulings concerning the defendants' assertion of the privilege. Taking cognate Federal law[5] as his model, he found and held, assuming that the asserted privilege existed, that the defendants had properly invoked it, and that certain specified documents were within its scope.

[5] As to the procedures required to be followed in invoking the privilege under Federal law, see *Resident Advisory Bd.* v. *Rizzo,* 97 F.R.D. 749, 752-753 (E.D. Pa. 1983). As to the criteria used in determining the applicability of the Federal privilege to a given document, see *NLRB* v. *Sears, Roebuck & Co.,* 421 U.S. 132, 150-154 (1975); *Taxation with Representation Fund* v. *Internal Revenue Serv.,* 646 F.2d 666, 677-678 (D.C. Cir. 1981); *Coastal States Gas Corp.* v. *Department of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980); *Mobil Oil Corp.* v. *Department of Energy,* 102 F.R.D. 1, 5-6 (N.D.N.Y. 1983); *Resident Advisory Bd., supra* at 753.

The judge correctly ruled that there presently exists no privilege of the type the defendants assert. We have previously declined to consider the question in the abstract. *Opinion of the Justices*, 368 Mass. 866, 880 (1975). This case squarely presents the issue.

The defendants contend that this court should create a privilege under Massachusetts law, modeled on Federal law of executive privilege. They advance both constitutional grounds and nonconstitutional policy arguments in favor of such a privilege. We discuss first the constitutional arguments.

1. The defendants argue that executive privilege inheres in or is a necessary ramification of the doctrine of separation of powers, which is fundamental to our form of government, and which finds positive expression in art. 30 of the Declaration of Rights of the Massachusetts Constitution. We disagree. We think that the doctrine of separation of powers does not require recognition of the asserted privilege. What this doctrine inter- dicts is the interference by one branch of government with the power or functions of another. See *New Bedford Standard- Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404, 410-411 (1979); *Opinion of the Jus- tices*, 375 Mass. 795, 813-814 (1978); *Opinion of the Justices*, 372 Mass. 883, 892-894 (1977); *Opinion of the Justices*, 365 Mass. 639, 640-642 (1974); *Opinion of the Justices*, 208 Mass. 610, 613 (1911). Our declining to recognize the asserted privilege does not constitute the exercise of nonjudicial power or interfere with the Executive's power. We think that it is relevant that the defendants have failed to demonstrate that the Executive does not function effectively because of the lack of the asserted privilege. Moreover, the explicit constitutional grant to the Legislature of a "privilege" as to its deliberations, see art. 21 of the Declaration of Rights of the Massachusetts Constitution, further supports our view that a corresponding privilege in the Executive is not constitutionally required. Had the framers of our government's structure intended to recognize in our Constitution an executive privilege, it is reasonable to expect that they would expressly have created one.

We add that, even under Federal law, where the privilege is well established, and which the defendants urge us to adopt as our model, "there is abundant statutory precedent for the regulation and mandatory disclosure of documents in the possession of the Executive branch . . . . [and s]uch regulation of material generated in the Executive branch has never been considered invalid as an invasion of its autonomy." *Nixon* v. *Administrator of Gen. Servs.*, 433 U.S. 425, 445 (1977) (citations omitted).

2. Having considered and rejected the defendants' constitutional argument, we now turn to their contention that we should create a privilege as a matter of common law. We observe, first, that the defendants must overcome the customary reluctance of this court, exhibited on many occasions, to create common law privileges to exclude relevant evidence. We have consistently concluded that the creation of such privileges ordinarily is better left to the Legislature. See *infra*.

Although this court has the power to create privileges, *Three Juveniles* v. *Commonwealth*, 390 Mass. 357, 360 (1983), it is a power that we have exercised sparingly, and "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* at 359-360, quoting *Elkins* v. *United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting). "[P]rivileges are exceptions to the general duty imposed on all people to testify," *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5 (1982); *Three Juveniles*, *supra* at 359; *Matter of Pappas*, 358 Mass. 604, 607-609 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665, 709 (1972), and to the fundamental principle that "the public 'has a right to every man's evidence' . . . [which] has been preferred, on the whole, to countervailing interests." *Matter of Pappas*, *supra* at 607, quoting 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961). See *Three Juveniles*, *supra* at 359; *Commonwealth* v. *Collett*, 387 Mass. 424, 442 (1982) (Lynch, J., dissenting). See also *United States* v. *Bryan*, 339 U.S. 323, 331 (1950). Accordingly, existing privileges are strictly construed, *Three Juveniles*, *supra* at 359;

*Corsetti, supra*; *Foster* v. *Hall*, 12 Pick. 89, 97 (1831), and we have been reluctant to create new privileges, preferring to leave this area to legislative determination. See *Three Juveniles, supra* at 360; *Commonwealth* v. *Mandeville*, 386 Mass. 393, 409 (1982); *Matter of Pappas, supra* at 611-612. Cf. *Usen* v. *Usen*, 359 Mass. 453, 456-457 (1971) (court "not free to water down the legislative policy embodied in the [psychotherapist-patient privilege] statute by loose construction"). Accord *In re Terry W.*, 59 Cal. App. 3d 745, 749 (1976); *People* v. *Sanders*, 99 Ill. 2d 262, 271 (1983);[6] *Cissna* v. *State*, 170 Ind. App. 437, 439-440 (1976); *State* v. *Gilroy*, 313 N.W. 2d 513, 518 (Iowa 1981). Cf. *Petition for the Promulgation of Rules*, 395 Mass. 164, 169, 170-172 (1985) (declining to promulgate evidentiary rule of "reporter's privilege"; noting that adoption of evidentiary rules "require[s] careful coordination with the Legislature;" but also citing the advantages of the common law case-by-case approach). See generally McCormick, Evidence § 75, at 180 (3d ed. 1984) ("It may be argued that legitimate claims to confidentiality are more equitably received by a branch of government not preeminently concerned with the factual results obtained in litigation, and that the legislatures provide an appropriate forum for the balancing of the competing social values necessary to sound decisions concerning privilege"); Note, The Parent-Child Privilege, 1984 B.Y.U.L. Rev. 599, 608-614 & n.63 ("Since the early 1800's the vast majority of new privileges created have been of legislative origin," citing McCormick, *supra*; and

---

[6] "The expansion of existing testimonial privileges and acceptance of new ones involves a balancing of public policies which should be left to the legislature. A compelling reason is that while courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truthseeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make." *Sanders, supra* at 271.

surveying State codifications of law of privileges).[7] The Legislature has created or codified various types of privileges. See

[7] The other States are divided on the issue of which branch of government is the appropriate source of new privileges. In at least twenty States, common law innovation in this area has been foreclosed by statute or rule of court. See Alaska R. Evid. 501 (1987); Ark. R. Evid. 501 (1988); Cal. Evid. Code § 911 (Deering 1986); Fla. Stat. Ann. § 90.501 (West 1979); Hawaii R. Evid. 501, Hawaii Rev. Stat. § 626-1 (1981); Idaho R. Evid. 501 (1985); Me. R. Evid. 501 (1988); Md. Cts. & Jud. Proc. Code Ann. § 9-101 (1984); Miss. R. Evid. 501 (1988); Mont. R. Evid. 501 (1988); Neb. Rev. Stat. § 27-501 (1985); Nev. Rev. Stat. § 49.015 (1987); N.H.R. Evid. 501 (1986); N.J. Stat. Ann. § 2A:81-4 (West 1976); N.M.R. Evid. 11-501 (1986); N.D.R. Evid. 501 (1988); Okla. Stat. Ann. tit. 12, § 2501 (West 1980); Or. R. Evid. 514 (1988); S.D. Codified Laws Ann. § 19-13-1 (Rule 501) (1987); Tex. R. Civ. Evid. 501 (1988); Tex. R. Crim. Evid. 501 (1988); Wis. Stat. Ann. § 905.01 (West 1975). In at least ten other States, common law jurisdiction in this area has been expressly sanctioned by statute or rule of court. See Ariz. R. Evid. 501 (1988); Colo. R. Evid. 501 (1980); Del. Uniform R. Evid. 501 (1980); Mich. R. Evid. 501 (1988); N.C.R. Evid. 501 (1988); Ohio R. Evid. 501 (1985); Utah R. Evid. 501 (1988); Vt. R. Evid. 501 (1985); W. Va. R. Evid. 501 (1988); Wyo. R. Evid. 501 (1978). We are aware of four State Supreme Courts which have recognized a privilege of the type asserted by the defendants. See *Doe* v. *Alaska Superior Court*, 721 P.2d 617-624 (Alaska 1986) (internal communications in Governor's files regarding appointment to State medical board); *Hamilton* v. *Verdow*, 287 Md. 544 (1980) (report to Governor of investigation into release of convicted murderer) (on State constitutional grounds); *Nero* v. *Hyland*, 76 N.J. 213 (1978) (report of character investigation of prospective State appointee, prepared by State police for Governor and Attorney General; *State ex rel. Attorney Gen.* v. *First Judicial Dist. Court*, 96 N.M. 254 (1981) (investigatory report on prison riot, prepared by State Attorney General) (on State constitutional grounds). In addition, other courts have recognized various types of executive privilege in contexts further removed from that of the instant case; generally, in the context of records of law enforcement agencies. See, e.g., *Assured Investors Life Ins. Co.* v. *National Union Assocs.*, 362 So. 2d 228 (Ala. 1978) (transcript of district attorney's interviews with officers and directors of a civil defendant, relating to ongoing criminal investigation collateral to the civil action); *Martinelli* v. *District Court*, 199 Colo. 163 (1980) (civil defendant police department's personnel files and report of internal affairs division's investigation); *People* v. *Ellerhorst*, 12 Mich. App. 661 (1968) ("Formal" claim of privilege sustained where petitioner made only a "dubious showing of necessity" for documents relating to Internal Revenue Service agent's knowledge of a government witness's credibility); *Cirale* v. *80 Pine Street Corp.*, 35 N.Y.2d 113 (1974) (report of investigation by municipal board of inquiry as to cause of explosion); *Henneman* v. *Toledo*, 35 Ohio St. 3d 241 (1988) (defendant police department's internal affairs division's report of investigation into alleged battery by police officers).

G. L. c. 112, § 135 (1986 ed. & Supp. 1987) (certain communications to a licensed social worker); G. L. c. 233, § 20, Second (1986 ed.) (spouse's election not to testify against spouse in a criminal proceeding [other than for child abuse or nonsupport]); G. L. c. 233, § 20A (1986 ed.) (certain communications to clergymen); G. L. c. 233, § 20B (1986 ed. & Supp. 1987) (certain communications between psychotherapists and patients). Cf. G. L. c. 233, § 20, First (1986 ed.) (testimonial disqualification of spouse as to private conversations with spouse).[8]

Against this court's consistent reluctance to create common law privileges, as shown above, we appraise the defendants'

---

[8] Because we ordinarily have deferred to the Legislature on issues of evidentiary privilege, it is pertinent to observe what the Legislature has done in this or in related contexts. Of course, the Legislature has not specifically acted to create a privilege of the type asserted by the defendants. While we impute little significance to such legislative inaction, we do find some evidence that may reflect the Legislature's prevailing attitude on this matter in the analogous context of public records law. The Public Records Act, G. L. c. 66 (1986 ed.), requires public access to various records and documents in the possession of public officials, with certain exceptions. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 430-431 (1983). Among the documents exempted from mandatory disclosure are "inter-agency or intra-agency memoranda or letters relating to policy positions *being developed* by the agency . . ." (emphasis added). G. L. c. 4, § 7, Twenty-sixth (*d*) (1986 ed.). By its terms, this exemption protects such documents from disclosure only while policy is "being developed," that is, while the deliberative process is ongoing and incomplete. See Brant, Public Records, FIPA and CORI: How Massachusetts Balances Privacy and the Right to Know, 15 Suffolk U. L. Rev. 23, 31 (1981).

The Legislature has thus chosen to insulate the deliberative process from scrutiny only until it is completed, at which time the documents thereby generated become publicly available. See *Letter-Determination of the Supervisor of Public Records* 87/208, January 20, 1988, at 2-3; *Letter-Determination of the Supervisor of Public Records* 87/208, November 20, 1987, at 3-4; *Letter-Determination of the Supervisor of Public Records* 87/196, December 23, 1987, at 4; *Letter-Determination of the Supervisor of Public Records* 87/196, October 14, 1987, at 3-4. Thereafter, they are accessible by " 'any person' whether intimately involved with the subject matter of the records he seeks or merely motivated by idle curiosity." *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 64 (1976). It arguably would be anomalous if access to these materials, intended to be available even to the merely "idly curious," should be denied to those who, like the plaintiffs here, have a specific and demonstrable need for them.

arguments that the executive privilege urged here will promote good public policy. They say that the privilege prevents possible public misinterpretation or confusion about the reasons behind executive policies. They also say that the privilege advances the public interest in well considered executive policymaking, by promoting candid and unconstrained communication and exchange of ideas between and among executive policymakers and their advisors. They contend that our failure to recognize the privilege would have a "chilling effect" on such intra-executive communication, to the detriment of the policymaking process and, ultimately, the public interest.

The plaintiffs controvert the defendant's arguments, and urge additional considerations that they say militate against the creation of the asserted privilege. They argue that the history of the Commonwealth demonstrates that the Executive has functioned effectively despite the lack of the privilege, and that this refutes the defendants' argument as to the chilling effect of disclosure on intra-executive communications. It is arguable that the threatened "misinterpretation or confusion" could be forestalled by stating the actual reasons for the adoption or rejection of a particular policy, either at the time of promulgation, or later, in response to queries or erroneous attribution, and that public debate about the meaning and purposes of executive policy may result in better policymaking.

There is force and logic to the defendants' policy arguments, but the arguments against the privilege are also persuasive. We have been especially reluctant to create new privileges on the basis of speculation or conjecture as to the harms which may result from our failure to do so. See *Matter of Roche*, 381 Mass. 624, 635 (1980). We think that the defendants' assertions (which are unsupported by any empirical evidence) are speculative in light of the long history of the Commonwealth and the lack of any showing of real harm that has accrued from the absence of the privilege. This contrasts with the plaintiffs' specific and demonstrable need for the requested documents in order to prosecute their action for the vindication of

their constitutional and statutory rights, allegedly violated by the defendants.[9]

We therefore decline to create a privilege of the type asserted by the defendants, and we affirm the correctness of the order below.

*So ordered.*

---

[9] We express no opinion on the merits of the plaintiffs' claims.