Lauriat, J.
This case arises out of a contractual dispute between the Massachusetts Bay Transportation Authority (“MBTA”) and Deloitte & Touche (“De-loitte”). Deloitte now seeks a protective order to prevent certain discovery sought by the MBTA pertaining to an internal review by Deloitte of its performance of the contract.
BACKGROUND
The underlying contract at issue in this case concerned the implementation of an automated financial management and human resources information system for the MBTA. The MBTA hired Deloitte to manage the development and installation of this new system. Deloitte’s work on the project began in 1989. In late 1990, Deloitte’s management asked Lee Curtis (“Curtis”), a Deloitte partner, to review the status of the relationship between Deloitte and the MBTA, as well as Deloitte’s performance of its part of the contract. Curtis, along with another Deloitte partner (who is not identified in the papers before the court), conducted the review by interviewing “Deloitte partners, managers, and staff and MBTA managers involved with the project, and [examining relevant] work papers and contractual documents.” Affidavit of Lee R. Curtis, November 21, 1995, ¶¶5-6. Curtis then “[i]n the weeks following the on-site review process . . . had several conversations with the Deloitte project partners concerning the results of the review and my preliminary recommendations.” Id. at ¶7. Finally, he “prepared a memorandum reporting the results of my review of the [p]roject and my analysis, impressions and recommendations concerning Deloitte’s performance . . . and the positions of both the MBTA and Deloitte with respect to the status of the parties’ contract.” Id. at ¶8. The MBTA now seeks to depose Curtis, and in its requests for production of documents has sought any “quality reviews” in Deloitte’s possession regarding the project. Deloitte has moved for a protective order preventing the deposition and shielding Curtis’s review memorandum from discovery.
Deloitte has asserted two bases for the protective order it seeks: (1) the so-called “self-critical analysis” privilege; and (2) the work product doctrine.
DISCUSSION
I. “Self-Critical Analysis” Privilege
Deloitte first contends that Curtis’s memorandum and his observations are protected from discovery under the self-critical analysis privilege. This privilege has been recognized by some courts; two leading cases applying it are Sheppard v. Consolidated Edison Co. of New York, Inc., 893 F.Supp. 6 (E.D.N.Y. 1995), and In re Crazy Eddie Securities Litigation, 792 F.Supp. 197 (E.D.N.Y. 1992). However, as the MBTA points out, this privilege has neither been adopted by the courts of Massachusetts nor statutorily enacted by the legislature. Indeed, the Supreme Judicial Court has said that “existing privileges are strictly construed . . . and we have been reluctant to create new privileges, preferring to leave this area to legislative determination.” Babets v. Secretary of Human Services, 403 Mass. 230, 235 (1988) (citations omitted). There may well be salutary reasons for adopting a self-critical privilege in Massachusetts, but it is the province of the legislature to do so. The legislature not yet having done so, Deloitte may not avail itself of this privilege.
II. Work Product Doctrine
Deloitte also asserts that Curtis’s report and observations are protected from discovery by the work product doctrine. This doctrine is codified in Mass.R.Civ.P. 26(b)(3), which states, in part,
... a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials .. . and ... is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
Deloitte claims that the review occurred when “Curtis was aware . . . that there was a possibility that the deteriorating relationship between the MBTA and De-loitte would result in litigation.” Defendant Deloitte & Touche’s Memorandum in Support of Its Motion for Protective Order at 5. Curtis’s affidavit submitted in support of Deloitte’s motion, however, does not substantiate the position that the review was undertaken in anticipation of litigation. Curtis states
[i]n late 1990,1 was asked by members of Deloitte’s senior management to conduct an internal review of a consulting engagement Deloitte undertook on behalf of the [MBTA] ... I was informed that the review was desired because the engagement was experiencing difficulties.
Affidavit of Lee R. Curtis at ¶¶2, 3. Curtis’s own account of the review he performed therefore provides no basis for concluding that it was done in anticipation of litigation; his affidavit only mentions the word “litigation" once, in the last paragraph, where he describes his “general awareness that the engagement was ultimately terminated and has resulted in litigation.” Therefore, Deloitte may not shield the review from discovery on work product grounds.
Although discovery may now proceed with respect to Curtis and his review of the Deloitte/MBTA contract, the court makes no judgment as to the ultimate admissibility of any information discovered by the MBTA.
ORDER
For the foregoing reasons, the Defendant’s Motion for Protective Order is DENIED.