Ann K. Lambert *vs*. Executive Director of the Judicial
Nominating Council.

Suffolk. March 3, 1997. - July 11, 1997.

Present: Wilkins, C.J., Abrams, Lynch, & O'Connor, JJ.

*Public Records. Governor. Judge.*

Questionnaires completed by applicants for judicial appointment and submitted to the Governor through the Judicial Nominating Council (JNC) are not public records under G. L. c. 4, § 7, Twenty-sixth. [408-410]

Civil action commenced in the Superior Court Department on August 10, 1995.

The case was heard by *Charles J. Hely*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Mark W. Batten* (*Jonathan M. Albano* with him) for the plaintiff.

*Peter Sacks*, Assistant Attorney General, for the defendant.

*Dorothy Kelly Gay*, amicus curiae, submitted a brief.

Abrams, J. At issue is whether a questionnaire completed by an applicant for judicial appointment and submitted to the Governor through the Judicial Nominating Council (JNC) is a public record under G. L. c. 4, § 7. Under our Constitution, the Governor has the exclusive power to nominate and appoint "all judicial officers." Part II, c. 2, § 1, art. 9, of the Massachusetts Constitution.[1]

On April 19, 1995, the plaintiff, Ann Lambert, asked the executive director of the JNC for copies of its internal procedures as well as a copy of the completed "Personal Data Questionnaire" of one candidate for judicial appointment. The executive

---

[1] "All judicial officers . . . shall be nominated and appointed by the governor, by and with the advice and consent of the council . . . ." Part II, c. 2, § 1, art. 9, of the Massachusetts Constitution.

director complied with the request as to the internal procedures of the committee but refused the request as to the questionnaire.[2] On June 28, 1995, eight days after the Governor nominated the candidate, Lambert appealed from the denial of her request, pursuant to G. L. c. 66, § 10 (*b*), to the acting supervisor of public records within the office of the Secretary of the Commonwealth.

On August 10, 1995, before the acting supervisor issued a decision, Lambert commenced this action in the Superior Court seeking a declaration that the questionnaire was within the public records statute and an injunction compelling its release. A Superior Court judge stayed the proceedings pending the determination of the acting supervisor of public records. On August 30, 1995, the acting supervisor issued a decision ordering the executive director of the JNC to release the completed questionnaire, excepting certain redacted portions[3] which the acting supervisor believed were exempted by G. L. c. 4, § 7, Twenty-sixth (*c*).[4]

The executive director of the JNC and Lambert both moved for summary judgment in the Superior Court. The Superior Court judge declared that the JNC and its executive director are not subject to the public records statute both because neither is an entity within the meaning of the public records law, and because to hold otherwise would interfere impermissibly with the Governor's constitutional power in violation of art. 30 of the Massa-

---

[2]The questionnaire contains forty-four questions, some with subsections. Among these questions are some that call for information that otherwise would not be public. For example, the questionnaire asks the candidate to divulge any history of mental illness, alcoholism, or drug abuse. The questionnaire probes into the candidate's personal, financial, and legal affairs including the disposition of any legal proceedings where the candidate was a party, even if such proceedings involve cases the records of which might be sealed, expunged, or impounded.

[3]The acting supervisor allowed for redaction of any information relating to the candidate's debt status, investments, other financial matters, medical and criminal histories, involvement with the Board of Bar Overseers, and evaluative statements made by the candidate.

[4]General Laws c. 4, § 7, Twenty-sixth (*c*), exempts from the definition of public records certain material or data including "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."

chusetts Declaration of Rights.[5] Lambert appealed. We granted the JNC's application for direct appellate review. We conclude that the Superior Court judge correctly declared that the records of the JNC are not public records.

Since the mid-1970's, each Governor has established a judicial nominating commission or council (JNC) to assist in identifying and screening applicants for judicial appointment. The Governor created the current JNC by Executive Order 355. The JNC's stated purpose is "to advise the Governor with respect to appointments of judges, clerk-magistrates and clerks of court." Executive Order 355, § 1. Section 14 of that order provides: "All records and deliberations with respect to persons under consideration as nominees or prospective nominees shall be held in confidence by the Executive and Regional Committees but shall be available to the Governor and the Governor's designee. It is intended that the names of individuals forwarded to the Executive Committee and to the Governor be confidential to the extent possible, and intentional breaches of this important responsibility may be grounds for removal." Thus, the Governor, by his executive order, has determined that he is best able to exercise his constitutional duty if the JNC's records and deliberations remain confidential. Lambert contends that, despite the Governor's determination to keep the JNC's records confidential, G. L. c. 4, § 7, Twenty-sixth,[6] governs and that the JNC's questionnaire is a "public record." We do not agree.

The Justices have said that "the Governor has broad discretion to select the means he will use in executing a constitutional duty." *Opinion of the Justices*, 368 Mass. 866, 874 (1975). The Governor may enlist aid, privately or publicly, formally or informally, as he alone deems appropriate, as long as "he does not surrender to them his responsibility to select a candidate and

[5]Article 30 of the Declaration of Rights of the Massachusetts Constitution provides: "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative or judicial powers, or either of them: the judicial shall never exercise the legislative or executive powers, or either of them: to the end that it may be a government of laws and not of men."

[6]General Laws c. 4, § 7, Twenty-sixth, defines "[p]ublic records" as "all books, papers, maps . . . made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose."

to make the nomination and appointment." *Id.* at 874-875. Members of the JNC do not hold any "civil or public office" and may exercise "no part of the sovereign power." *Id.* at 876.

Neither the Legislature nor the Judiciary are expressly included in G. L. c. 4, § 7, Twenty-sixth. We have noted that "[t]he Legislature is not one of the instrumentalities enumerated in G. L. c. 4, § 7, Twenty-sixth, whose records are subject to public disclosure. It is not an 'agency, executive office, department, board, commission, bureau, division or authority' within the meaning of § 7, Twenty-sixth." *Westinghouse Broadcasting Co.* v. *Sergeant-at-Arms of the Gen. Court,* 375 Mass. 179, 184 (1978). We also have determined that court records and "all else properly part of the court files were outside the range" of inspection based on the text of G. L. c. 4, § 7, Twenty-sixth. See *Ottaway Newspapers, Inc.* v. *Appeals Court,* 372 Mass. 539, 546 (1977). Likewise, the Governor also is not explicitly included in clause Twenty-sixth. "Like the Legislature and the Judiciary, the Governor possesses incidental powers which he can exercise in aid of his primary responsibility." *Opinion of the Justices, supra* at 874.

The JNC was created to assist the Governor in carrying out his constitutional obligation. It is an interviewing and screening body whose sole purpose is to assist the Governor.[7] It has no public function. The JNC's records are essentially the Governor's records on judicial appointments. Those records are not within G. L. c. 4, § 7, Twenty-sixth.[8]

---

[7]In construing the open meeting law, G. L. c. 39, §§ 23A-23C, we said that the open meeting law does not apply to a school superintendent who set up a selection committee to assist him in nominating candidates for the principal of a high school because such a committee "was not a committee of the town of Hanover but a committee of the superintendent." *Connelly* v. *School Comm. of Hanover,* 409 Mass. 232, 237 (1991). So, too, is the JNC simply a committee of the Governor to assist in the interviewing and screening process.

The Governor is bound by the order "only as long as he chooses to be bound." *Opinion of the Justices, supra* at 875. Therefore, no one can require the Governor to comply with his executive order. The Governor's compliance is voluntary and not a legal duty or obligation. See *Shapp* v. *Butera,* 22 Pa. Commw. 229 (1975).

[8]The JNC's records are similar to "notebooks and other materials prepared by an employee of the commonwealth which are personal to him and not maintained as part of the files of the governmental unit." See G. L. c. 4, § 7, Twenty-sixth *(e).*

Lambert argues that *Babets* v. *Secretary of Human Servs.*, 403 Mass. 230 (1988), and *New Bedford Standard-Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404 (1979), control this case and require a conclusion that the JNC's records are public records. We do not agree.

In *Babets*, the Secretary of Human Services withheld certain documents during discovery, asserting executive privilege, a privilege which we concluded did not exist. We determined that we need not recognize an executive privilege because the discovery order did not interfere with the Executive's power. *Babets*, *supra* at 233. The case at bar is dissimilar in two important respects: the JNC has not attempted to invoke any privilege and the questionnaire is used by the Governor solely to fulfil his constitutional duty. The questionnaire has no public· function.

In *New Bedford Standard-Times Publishing Co.*, *supra*, we said that certain provisions of the Criminal Offender Record Information Act, G. L. c. 6, § 172, prohibiting access to the alphabetical index of criminal defendants kept by a court, did not violate the separation of powers. In that case we said, "There is no showing here that the denial of public access impairs the ability of the District Court to function. . . . The present case shows no conflict between legislation or administrative regulation, on the one hand, and any judicial rule or order, on the other." *Id.* at 412. Were we to conclude that the public records law included the records of the JNC, a conflict could arise between the legislation and the executive order which could impair the Governor's ability to exercise his constitutional responsibility. "[O]ur duty [is] to construe a statute in a way to avoid constitutional problems." *Waltham Tele-Communications* v.. *O'Brien*, 403 Mass. 747, 751 (1989), quoting *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 800 (1982).

Lambert also asserts that the public policy of openness of government requires that we treat the questionnaire as a public record. There is no merit to that contention. The policy underlying public process is fulfilled by the Executive Council. The Executive Council's questionnaire and the Executive Council's hearings on the Governor's nominees amply satisfy the public interest in obtaining information about the Governor's choice.

*Judgment affirmed.*